# IN THE SUPREME COURT OF IOWA

No. 135/ 07-1546

Filed November 30, 2007

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD**,

Complainant,

vs.

**KEVIN MICHAEL KIRLIN**,

Respondent.

___

On review of the report of the Grievance Commission.

Grievance Commission report in disciplinary proceeding recommended suspending respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

John P. Roehrick of Roehrick Law Firm, P.C., Des Moines, for respondent.

**PER CURIAM.**

This case comes before the court on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10. The Commission found the respondent, Kevin M. Kirlin, violated the Iowa Code of Professional Responsibility and the Iowa Rules of Professional Conduct by neglecting two clients' legal matters and by failing to comply with the notification provisions of Iowa Court Rule 35.21. The Commission recommends a ninety-day suspension and would require the respondent to provide medical certification as to his fitness to practice law before reinstatement. In addition, the Commission recommends that, upon return to practice, the respondent be required to have a licensed attorney monitor his practice of law. Upon our respectful consideration of the findings of fact, conclusions of law, and recommendation of the Commission, we find the respondent committed the charged ethical violations and suspend his license to practice law for sixty days. Prior to reinstatement, the respondent is required to provide medical certification of his fitness to practice law.

## I. Factual Background.

Kirlin was admitted to practice in this state in 1984. After three years in the Attorney General's Office, he entered private practice. In 1991 Kirlin moved into an office-sharing arrangement with a small law firm. With the exception of about a three-year period, this arrangement continued until 2003 when Kirlin moved his practice to his home. The complaints lodged against the respondent involve his handling of two workers' compensation cases.

**A. Smith Matter.** In October 2000 Kirlin agreed to represent Diane Smith in a workers' compensation claim arising from a back injury. In April 2001 the workers' compensation insurer made a

settlement offer, but Kirlin advised his client it would be helpful first to obtain an independent medical examination (IME) and to complete a vocational rehabilitation evaluation. No IME was scheduled, however, and to Kirlin's knowledge, Smith did not complete a vocational rehabilitation evaluation. Moreover, Kirlin never commenced a contested case proceeding on Smith's behalf with the division of workers' compensation.

Kirlin also represented Smith on a personal injury claim arising out of a March 2001 automobile accident. After reviewing Smith's medical records, he was concerned about significant mental health issues that he believed could seriously impair her credibility as a witness. His concerns were further enhanced by, among other things, his client's involvement in prior motor vehicle accidents, the marginal increase in the impairment rating given by a neurosurgeon after the accident in question, and Kirlin's suspicion that a witness to the personal injury accident provided by Smith was colluding with his client to provide perjured testimony on her behalf. In response to numerous inquiries from Smith, Kirlin advised her that he was working on a settlement proposal, but no proposal was ever prepared.

On August 8, 2002, Kirlin terminated the attorney/client relationship. In his closing letter to Smith, Kirlin advised Smith the statute of limitations would run on her workers' compensation claim in November 2004 and on her personal injury claim in March 2003.

In November 2002 Smith filed a complaint with the Polk County Bar Association Ethics Committee. When Kirlin failed to respond to inquiries from that committee, Smith's complaint was forwarded to the

Iowa Supreme Court Attorney Disciplinary Board.[1] The Board sent two letters to the respondent dated December 8, 2004, and January 10, 2005, regarding this matter. Kirlin did not respond to the Board's inquiry until December 22, 2006.

**B. Mendenhall Matter.** On July 18, 2002, Kirlin agreed to represent John Mendenhall in a workers' compensation claim arising from an alleged injury to Mendenhall's left leg. Based on the report of an orthopedic surgeon that Mendenhall's condition was preexisting, the workers' compensation insurer denied liability.

As time went on, Mendenhall had more and more difficulty contacting the respondent. After Kirlin moved his practice to his home in April 2003, he—Kirlin—requested and received patient authorization forms from Mendenhall to obtain medical records, but took no further action on his client's case. Although Kirlin was concerned that Mendenhall's case was weak, he never advised his client of this concern. Moreover, he never filed a contested workers' compensation claim within the statute-of-limitations period.

Eventually, Mendenhall filed a complaint with the Board. The respondent failed to respond to the Board's notice of the Mendenhall complaint. As a consequence, on October 25, 2005, this court temporarily suspended Kirlin's law license pursuant to Iowa Court Rule 34.7(3). In the order of suspension, Kirlin was advised to comply with the notification provisions of Iowa Court Rule 35.21 to the extent required by Iowa Court Rule 34.7(3)(*g*) and (*h*).

---

[1]Kirlin claims he did initially respond to the county bar committee's inquiry and asked for access to Smith's file, which he no longer had. He contends he did not receive that access until September 2003 when he was allowed to review her file in the office of a committee member. Nevertheless, it is undisputed that, after reviewing the records, Kirlin did not file any response to the complaint with the county bar committee.

**C. Failure to Notify Clients of Suspension.** Kirlin responded to both complaints on December 22, 2006. In addition, on January 2, 2007, the respondent self-reported to the Board that he had failed to comply with Iowa Court Rule 35.21 in that he did not timely notify his clients of his suspension. At the time, Kirlin had only two clients, and he sent these two clients belated notices of his suspension on January 2, 2007. On January 5, 2007, the respondent's license to practice law was reinstated by order of this court.

**D. Board's Complaint.** On February 7, 2007, the Board filed a three-count complaint against the respondent with the Grievance Commission. In the complaint, the Board alleged Kirlin violated various provisions of the Iowa Code of Professional Responsibility and the Iowa Rules of Professional Conduct in his handling of the Smith and Mendenhall matters and in his failure to timely notify clients of his suspension.

## II. Grievance Commission Findings and Conclusions.

A hearing before a panel of the Grievance Commission was held on June 27, 2007. Kirlin's former clients, Smith and Mendenhall, testified to Kirlin's representation and the effect his inattention had on their claims. While Smith was eventually able to successfully negotiate settlements with both the workers' compensation insurer and the insurer in her personal injury case, Mendenhall testified his workers' compensation claim was never pursued prior to the passing of the statute of limitations.

Kirlin admitted he violated our ethical rules and failed to appropriately represent his clients. Kirlin testified, however, his actions were the result of depression brought on by the realization that both his son and he had Attention Deficit Hyperactivity Disorder or ADHD.

In 2002 Kirlin's son was diagnosed with ADHD. Persons with ADHD often have difficulty organizing their daily activities and maintaining their concentration and the focus necessary to timely complete complex tasks; they are also more easily distracted by other factors in their environment. Kirlin testified that, upon learning of the symptoms associated with ADHD, he realized he has had ADHD all his life. This realization caused Kirlin to become depressed, as he believed he was responsible for passing the condition on to his son. As his depression deepened, Kirlin found he was incapable of dealing effectively with his law practice. It was about this time, in July and August of 2002, that Kirlin terminated his representation of Smith and his representation of Mendenhall began.

Kirlin first sought treatment for his depression in June 2003. Initial treatment was not, however, effective. It was not until Kirlin began treatment with Dr. Boesen, a psychiatrist specializing in ADHD, that Kirlin's condition began to improve. In November 2006 Dr. Boesen started Kirlin on a new medication. Shortly after beginning the new treatment, Kirlin's mental status began to improve dramatically. He was motivated to embark on a medically managed weight-loss program and lost ninety pounds. He regained his desire to practice law and in December 2006 resolved to address the complaints brought against him.

Kirlin's depression is in remission, and he continues his therapy with Dr. Boesen. Both Kirlin and his wife, who is also an attorney, believe Kirlin is now capable of resuming the practice of law. They believe he has regained the coping skills he previously utilized to deal with the symptoms of his undiagnosed ADHD. Moreover, as testified to by his family physician, Kirlin is motivated to follow through with his treatment.

The Commission concluded, and Kirlin admitted, his actions violated the ethical rules as alleged by the Board. While a factual dispute as to the "actual degree of damage" caused by Kirlin's actions to his clients exists, the Commission noted Kirlin "admitted that his actions affected his clients' cases." Moreover, the Commission found the evidence established Kirlin was aware his legal practice was suffering, but did not take any steps to protect his clients.

Based upon these findings and prior attorney disciplinary cases of this court, the Commission concluded a ninety-day suspension was warranted. Because it found conflicting medical evidence in the record as to Kirlin's current medical fitness to practice law, the Commission also concluded additional medical certifications were warranted before Kirlin's license could be reinstated. Finally, the Commission found Kirlin had not provided satisfactory evidence he was able to resume the practice of law other than in a monitored or supervised setting. Therefore, the Commission concluded that should Kirlin return to the practice he be required to have "a licensed attorney who is willing to act as his monitor/supervisor . . . [who] would meet at least monthly with Kirlin to go over his cases . . . [and] then certify to the Iowa Supreme Court that Kirlin's cases appear to be progressing."

### III. Scope of Review.

This court's review of an attorney disciplinary proceeding is de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 655 (Iowa 2001). While respectful consideration is given to the Commission's findings and recommendations, we are not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815, 818 (Iowa 2001). "Ultimately, it is the court's duty to decide what discipline is appropriate under the circumstances."

*Id.* The Board has the burden of proving the alleged violations by a "convincing preponderance of the evidence." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford,* 625 N.W.2d 672, 679 (Iowa 2001).

## IV. Ethical Violations.

To his credit, Kirlin has never disputed the relevant facts or that his conduct violated our ethical rules. The Board has established, by a convincing preponderance of the evidence, the alleged violations.

Iowa Code of Professional Responsibility DR 6–101(A)(3) provides that "a lawyer shall not neglect a client's legal matter." Professional neglect involves "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 551 (Iowa 2004).

Kirlin's conduct in both the Smith case and the Mendenhall case evinces neglect. In the Smith case, he failed to file a contested case proceeding with the division of workers' compensation, and he failed to prepare a settlement proposal. In the Mendenhall matter, he stopped responding to the client's inquiries and failed to file a contested workers' compensation case. Accordingly, Kirlin violated DR 6–101(A)(3). "[D]ilatory handling of client matters is a disservice not only to the client, but also to the judicial system and is a violation of DR 1–102(A)(5) ('A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice.')." *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Kadenge,* 706 N.W.2d 403, 408–09 (Iowa 2005). Thus, the respondent also violated this disciplinary rule.

In addition, Kirlin's failure to properly notify clients of his suspension violated the Iowa Rules of Professional Conduct. Iowa Court Rules 34.7(*g*) and (*h*) and 35.21 required Kirlin to notify his current

clients of his suspension and to advise them to seek counsel elsewhere. His failure to timely do so violated rule 32:1.16(a)(1) (a lawyer shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or other law). Moreover, Kirlin violated rule 32:8.4(d) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice) by continuing to represent clients while his license was under suspension.

### V. Appropriate Discipline.

What constitutes an appropriate sanction must be determined in light of the particular circumstances of each case. *Kadenge,* 706 N.W.2d at 410. Factors utilized to guide the court's determination include "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman,* 603 N.W.2d 600, 603 (Iowa 1999). "We also take into account 'both aggravating and mitigating circumstances.'" *Hohenadel,* 634 N.W.2d at 655 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears,* 569 N.W.2d 132, 134 (Iowa 1997)). We give respectful consideration to the Commission's recommendation, but are not bound by it. *Freeman,* 603 N.W.2d at 603.

The essence of the respondent's misconduct is neglect. Although there is no standard discipline for any particular type of attorney misconduct, when neglect of a client's legal matter is the primary infraction, discipline normally ranges from a public reprimand to a six-month suspension. *Id.*

A suspension is typically imposed when the client's case is prejudiced by the attorney's actions, an aggravating circumstance.

*Kadenge*, 706 N.W.2d at 410. In Kirlin's case, at least one client was prejudiced by his inattention. Additional aggravating circumstances in this case include the fact that Kirlin is an experienced attorney and that he has received a prior public reprimand for a violation of this court's advertising rules. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Dull*, 713 N.W.2d 199, 207 (Iowa 2006) ("Another aggravating factor is experience in the practice of law."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 627 N.W.2d 567, 573 (Iowa 2001) ("Though not similar to the violations at issue here, the prior reprimand is an aggravating factor.").

On the other hand, while we do not recognize depression or personal problems as an excuse for ethical violations, *see Adams*, 623 N.W.2d at 818, "personal circumstances such as depression are not ignored when we consider the sanctions to impose for the conduct." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 295 (Iowa 2002). Subsequent recovery efforts are of serious importance in the imposition of sanctions, both in terms of fitness to practice law and as mitigating circumstances. *Id.* When the attorney has made genuine efforts to address his or her problems and poses no threat to the public, the rationale for imposing a more serious sanction for deterrence effect loses some of its value. *Id.*

In Kirlin's case there is ample evidence to explain the relationship between depression and neglect of professional obligations. Kirlin's concern for his son and his belief that he may have passed a disability to him sent a lawyer who previously was able to successfully deal with his undiagnosed condition into a depression that overwhelmed his coping mechanisms. As a result, he lost interest in his legal career and neglected his clients. As we stated in *Grotewold,*

> when unethical conduct is the product of untreated mental illness, the protection of the public and the reputation of the profession can be vindicated by the diagnosis and successful treatment of the disease. . . . When unethical conduct attributable to depression is aberrant, and not part of the normal disposition of a lawyer, the goals of discipline are not as easily applied as when unethical conduct stems from the normal activities of a lawyer.

*Id.*

Kirlin's medical treatment for his depression has been successful. In addition, he now understands the source of his lifelong difficulty with organization and attentiveness to the task at hand and believes he has gained the necessary tools and support to deal with his condition. Thus, the goals of deterrence, public protection, and vindication of the profession are not significant factors in imposing discipline. *Cf. id.* at 296 (while evidence in the record explained the relationship between the attorney's depression and neglect of his professional obligations, the evidence did not similarly explain the relationship between the depression and the false statements made to the court; under these circumstances deterrence, public protection, and vindication of the profession are appropriately considered).

Based upon the facts of this case and our prior cases, we conclude the appropriate sanction in this case is a sixty-day suspension. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 381–82 (Iowa 2002) (neglect of criminal appeal and misrepresentation to court warranted sixty-day suspension when mitigating factors included marital stress and depression); *Grotewold*, 642 N.W.2d at 295–96 (sixty-day suspension for misconduct that included neglect of two clients' cases and a misrepresentation to the court when attorney suffered from depression at time of neglect); *Comm. on Prof'l Ethics & Conduct v. Humphrey*, 529 N.W.2d 255, 258 (Iowa 1995) (attorney who neglected

three probate matters and postconviction relief action as well as failed to cooperate with Commission suspended for sixty days; mitigating factors included depression for which attorney sought treatment). Within forty days of his suspension and prior to reinstatement, Kirlin is required to provide this court with an evaluation by a licensed medical professional certifying his fitness for practice. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. McCarthy*, 722 N.W.2d 199, 206 (Iowa 2006) (attorney suffering from serious depression that contributed to his neglect of client matters was required to provide the court with an evaluation by a licensed health care professional verifying his fitness to practice law).

We decline to impose the monitoring/supervising requirements recommended by the Commission. The Commission's recommendation was based upon deposition testimony of respondent's son's psychologist opining that, due to Kirlin's ADHD, Kirlin would still need "someone to organize him," that "deadlines will still continue to be a potential problem," and finally, that he will continue to need supervision when he returns to practice. As noted in prior cases, neither the court nor the bar has effective machinery in place for such supervision. *See Comm. on Prof'l Ethics & Conduct v. Thomas,* 495 N.W.2d 684, 687 (Iowa 1993); *Humphrey,* 529 N.W.2d at 258 (court reluctant to order probation based upon the lack of an effective way to supervise a lawyer on probation); *see also Hohenadel,* 634 N.W.2d at 657 (refusing to include probationary requirements that included employing the Iowa State Bar Association Lawyers Helping Lawyers Committee as a supervising agency as part of sanctions, noting such action "places that group beyond its scope"). Moreover, it is clear from the psychologist's testimony that the psychologist was not speaking from his personal treatment of the respondent, but from his general experience with the ADHD disability

and his perception of its effect on the respondent. Given the fact that Kirlin is an experienced litigator whose problems were not caused by incompetence, but by neglect resulting from his depression, and his previous proven ability to cope with his lifelong ADHD disability when not suffering from debilitating depression, we decline to impose such requirements upon him. *See Thomas*, 495 N.W.2d at 687 (when problems were not caused by incompetence but neglect, imposition of supervision would accomplish no useful purpose).

## VI. Conclusion.

We conclude the facts warrant a suspension of Kirlin's license to practice law. We suspend his license with no possibility of reinstatement for a period of sixty days from the date of the filing of this opinion. Within forty days of the suspension the respondent must provide the court with an evaluation by a licensed health care professional verifying his fitness to practice law. Subject to this condition and in the absence of an objection by the Board, we shall reinstate Kirlin's license to practice law on the day after the sixty-day suspension period expires.[2] Kirlin must comply with the notification requirements of Iowa Court Rule 35.21. The costs of this action are assessed against Kirlin in accordance with Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**

---

[2]Automatic reinstatement is subject to the following exceptions:

The Iowa Supreme Court Attorney Disciplinary Board may file and serve within the suspension period an objection to the automatic reinstatement of the attorney. The filing of an objection shall stay the automatic reinstatement until ordered otherwise by the court. If the board files an objection, the court shall set the matter for hearing and the clerk shall enter written notice in conformance with rule 35.13, except that the court may waive the requirement of a 60-day waiting period prior to the hearing date. Automatic reinstatement shall not be ordered until all costs assessed under rule 35.25 have been paid.

Iowa Ct. R. 35.12(2).

All justices concur except Appel, J., who takes no part.

This opinion shall be published.