# IN THE SUPREME COURT OF IOWA

No. 11–2114

Filed May 18, 2012

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**THOMAS G. McCUSKEY,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends respondent's license be suspended. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Thomas G. McCuskey, Cedar Rapids, pro se.

**MANSFIELD, Justice**.

An attorney continued to practice while his license was temporarily suspended. He also accepted advance fee payments in a matter and did not provide an accounting of earned fees or a refund of unearned fees. In addition, the attorney failed to respond to inquiries from the Iowa Supreme Court Attorney Disciplinary Board (Board) or generally cooperate with the disciplinary process.

This case comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa (commission). *See* Iowa Ct. R. 35.10(1).[1] The Board alleged the respondent, Thomas G. McCuskey, violated several rules of professional conduct and client trust account rules. Agreeing with the Board, the commission found that McCuskey violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4, 32:1.5, 32:1.15(f), 32:1.16(a), 32:3.4(c), 32:5.5(a), and 32:8.4(c) and Iowa Court Rules 45.2(2) and 45.7. The commission recommended an indefinite suspension from the practice of law with no possibility of reinstatement for two years. Upon our consideration of the commission's findings of fact, conclusions of law, and recommendations, we agree McCuskey has committed most of the violations found by the commission. We order his license suspended indefinitely with no possibility of reinstatement for one year.

### I. Factual and Procedural Background.

Because McCuskey did not answer the Board's complaint, its factual allegations are deemed admitted.[2] We also rely on several

---

[1]Recent amendments to the Iowa Court Rules are not applicable in this case because the hearing was held prior to the effective date of the amendments. *See* Iowa Ct. R. 35.26 (2012).

[2]The Board filed a motion to invoke Iowa Court Rule 36.7, which provides, "If the respondent fails or refuses to file [an] answer within the time specified, the allegations of the complaint shall be considered admitted, and the matter shall proceed to a

exhibits that the Board put into evidence at the commission hearing; McCuskey did not attend that hearing.

McCuskey was admitted to practice law in Iowa in 1974. At times relevant to these proceedings, he resided and maintained his law office in Linn County, Iowa.

On July 22, 2009, the Iowa Department of Revenue filed a certificate of noncompliance, informing this court that McCuskey's license was subject to suspension for an unpaid debt. *See* Iowa Code §§ 272D.7–8 (2009); Iowa Ct. R. 35.21. The next day, we issued a notice to McCuskey that his license would be suspended unless he caused the collection unit of the department of revenue to withdraw its certificate within thirty days. Withdrawal did not occur, so on September 30, 2009, we temporarily suspended McCuskey's license to practice law.

The order made the suspension effective immediately and stated it would continue until the department of revenue withdrew its certificate of noncompliance and this court reinstated McCuskey's license. The order also directed McCuskey to comply with Iowa Court Rule 35.22 (now Iowa Court Rule 35.23) regarding notification of clients, counsel, and courts.

The suspension order was sent to McCuskey by restricted certified mail to two separate addresses. One of these addresses was the actual Cedar Rapids address (including the suite number) that McCuskey was using at the time as his business address according to his own letterhead.[3]

_____

hearing on the issue of the appropriate sanction." The commission granted the Board's unresisted motion.

[3]The record does not contain a signed certified mail receipt. However, as we note above, the record indicates that the notice was sent to McCuskey's then-current business address, and there is no indication he did *not* receive it.

Nonetheless, McCuskey continued to practice law. On September 24, 2009, several days before the temporary suspension order but two months after our July 23, 2009 notice warning McCuskey of his impending suspension, McCuskey met with Frank and Lauri Gusta. The next day, September 25, he sent the Gustas a letter acknowledging receipt of $500 to start work on their bankruptcy case. In the letter, McCuskey indicated that a Chapter 7 bankruptcy filing for the Gustas would probably cost them about $1700 for attorney fees plus a $300 filing fee.

On October 7, after the suspension had taken effect, McCuskey sent the Gustas another letter, this time enclosing a draft of their proposed bankruptcy schedules and statement of affairs. On October 22, McCuskey arranged for a $1200 money order from the Gustas, dated October 21, to be deposited.

On January 21, 2010, McCuskey sent a letter to the Gustas "to follow up on our brief discussion this morning." The letter confirmed that the Gustas had provided updated information regarding their income and advised them it was "probably best to wait until your tax refund is determined before going further." The next day, McCuskey caused a $400 check from the Gustas, also dated January 21, to be deposited.

In addition, McCuskey corresponded by mail with several of the Gustas' creditors on December 18, 2009, February 17, 2010, February 26, 2010, March 22, 2010, and April 7, 2010. These letters informed the creditors that he represented the Gustas and expected to file a Chapter 13 (not a Chapter 7) bankruptcy petition on their behalf soon.

McCuskey never filed a bankruptcy petition for the Gustas. He also failed to send accountings to them for their earned fees or refund unearned fees.

McCuskey not only represented the Gustas after being suspended, he also filed a "supplemental argument" on behalf of The Views, LLC in a Linn County case on October 13, 2009.[4] In addition, according to the federal PACER system, McCuskey filed reports on behalf of debtor Carney Enterprises, LLC on November 13, 2009, December 16, 2009, and January 18, 2010. McCuskey also made a filing on behalf of Daniel Oakley in a Linn County case on June 8, 2010. There is no indication that McCuskey withdrew as counsel of record in these cases. *See* Iowa Ct. R. 35.22. Further, McCuskey failed to submit proof to the Board that he had sent notice of his suspension to his clients, opposing counsel, and all courts in which he had pending litigation. *See id.*

On April 29, 2010, the Board filed a certificate with this court stating that McCuskey had failed to respond to the Board's second notice of inquiry concerning a complaint. On April 30, we issued a notice that McCuskey's license would be suspended unless he caused the Board to withdraw its certificate within twenty days. McCuskey did not respond, and on June 8, we ordered another suspension of his license effective immediately and lasting until the Board filed a withdrawal of the certificate and this court entered an order to reinstate his license. The order was sent to the same two addresses as before by both certified and regular mail.

On July 1, 2011, the Board filed a complaint against McCuskey, alleging he had violated Iowa Rules of Professional Conduct 32:1.3,

---

[4]The certificate of service indicates the document was served on September 29, but the file stamp indicates it was not actually filed until October 13.

32:1.4, 32:1.5, 32:1.15(f), 32:1.16(a), 32:3.4(c), 32:5.5(a), and 32:8.4(c) and Iowa Court Rules 45.2(2) and 45.7. The complaint was sent by certified mail to the aforementioned business address in Cedar Rapids as well as a post office box in Keokuk. Personal service was attempted, unsuccessfully, through the Linn County Sheriff.

McCuskey did not file an answer within twenty days of service of the complaint. *See* Iowa Ct. R. 36.7. The Board filed, and the grievance commission granted a motion to invoke Iowa Court Rule 36.7 and deem the allegations of the complaint admitted. Therefore, the hearing was limited to the appropriate sanction.

McCuskey did not appear at the hearing on November 29, 2011, and he did not submit any evidence to the commission. The Board did appear through counsel and introduced a number of exhibits. Following the hearing, the commission issued a report finding that McCuskey had violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4, 32:1.5, 32:1.15(f), 32:1.16(a), 32:3.4(c), 32:5.5(a), and 32:8.4(c) and Iowa Court Rules 45.2(2) and 45.7. The commission recommended that McCuskey be suspended indefinitely with no possibility of reinstatement for two years.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.10(1); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 793 (Iowa 2010). We give respectful consideration to the commission's findings and recommendations but are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 864 (Iowa 2010). "The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence." *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance

standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). It is also a less stringent burden than clear and convincing evidence which is "the highest civil law standard of proof." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996). If a violation is established, we "may impose a lesser or greater sanction than recommended by the commission." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Murphy*, 800 N.W.2d 37, 42 (Iowa 2011); *see also* Iowa Ct. R. 35.10(1).

### III. Review of Alleged Ethical Violations.

McCuskey repeatedly failed to comply with this court's order temporarily suspending him from the practice of law. From this misconduct, we find that several ethical violations follow.

**A. Rule 32:5.5.** Rule 32:5.5 is entitled "Unauthorized practice of law" and prohibits a lawyer from "practic[ing] law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." Iowa R. Prof'l Conduct 32:5.5(a). We recently found an attorney in violation of this rule for appearing in juvenile court six days after he had been notified that his law license had been temporarily suspended for failure to meet a department of revenue obligation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 620 (Iowa 2012); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 604 (Iowa 2011) (holding that counseling a client on a tax matter after suspension violated rule 32:5.5(a)).

The record does not reflect that McCuskey personally signed for the certified mailing that contained the September 30, 2009 suspension order. Nonetheless, we noted in *Hearity* that rule 32:5.5(a) "contains no express scienter requirement." 812 N.W.2d at 620; *see also Comm. on*

*Prof'l Ethics & Conduct v. Toomey*, 253 N.W.2d 573, 574 (Iowa 1977) (charging an attorney with constructive knowledge of a published supreme court order suspending his license). In any event, McCuskey did not deny receiving notice of the suspension, and given the undisputed facts set forth above, it seems highly unlikely that he would have been unaware of it.

There is no question that McCuskey's post-September 30, 2009 representation of the Gustas, Carney Enterprises, and Daniel Oakley constituted the practice of law. In particular, McCuskey took money from the Gustas, advised the Gustas, and corresponded on their behalf with creditors—all after September 30. Continuing to practice law despite being suspended is, of course, prohibited. This includes practicing in federal bankruptcy court. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 233 n.3 (Iowa 2006). Accordingly, we find McCuskey violated rule 32:5.5(a).

**B. Rule 32:8.4(c).** Rule 32:8.4(c) states a lawyer commits professional misconduct by engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). A lawyer violates this rule if his misconduct is done with a purpose to deceive. *Id.* r. 32:1.0(d) (defining "fraud" as "conduct that . . . has a purpose to deceive"). Recently, in *Iowa Supreme Court Attorney Disciplinary Board v. Dunahoo*, we found that an attorney violated this rule when he intentionally disobeyed a bankruptcy court's suspension order "for the purpose of deceiving his clients into believing he could continue to represent them in bankruptcy court." 799 N.W.2d 524, 531 (Iowa 2011). We discern a similar situation here. Even though McCuskey undoubtedly knew his license had been suspended, he continued to take fees from the Gustas and indicated to them and to

their creditors that he was working on their bankruptcy filing. This conduct violated rule 32:8.4(c).

**C. Rule 32:1.16(a)**. Rule 32:1.16(a) provides that a "lawyer shall not represent a client . . . if . . . the representation will result in violation of the Iowa Rules of Professional Conduct." Iowa R. Prof'l Conduct 32:1.16(a). In the *Dunahoo* case, we found that a lawyer's representation of a client after suspension violated this rule as well. 799 N.W.2d at 531. The same analysis applies here. McCuskey's representation of the Gustas and his other clients after his suspension amounted to a violation of rule 32:1.16(a). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 817 (Iowa 2007).

**D. Rule 32:1.4.** Rule 32:1.4 requires a lawyer to inform his or her clients of decisions or circumstances necessary to accomplish their goals and keep them informed on the matter. More particularly, rule 32:1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter," whereas rule 32:1.4(a)(5) requires a lawyer to "consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Iowa Rules of Professional Conduct or other law." The Gustas expected McCuskey to represent them in their bankruptcy proceeding. The Iowa Rules of Professional Conduct did not permit such assistance because as of September 30, 2009, McCuskey was suspended by order of this court for failure to meet an obligation owed to the department of revenue. McCuskey's failure to notify the Gustas about his suspension and inability to represent them was a violation of rule 32:1.4(a). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009) (finding that an attorney's failure to inform his clients of his suspension violated rule 32:1.4(a)(3)).

In sum, we find that McCuskey's continued efforts to practice law despite his suspension violated rules 32:5.5(a), 32:8.4(c), 32:1.16(a), and 32:1.4(a). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vilmont*, 812 N.W.2d 677, 680 (Iowa 2012) (noting that "[a] violation of one rule of professional conduct often implicates other rules of professional conduct").[5]

**E. Trust Account Rules (Rules 32:1.15, 45.2, and 45.7)**. We now turn to the alleged violations related to McCuskey's handling of funds entrusted to him by the Gustas. Rule 32:1.15(c) requires fees to be withdrawn by the lawyer only as earned; rule 32:1.15(f) requires trust accounts to be governed by chapter 45. Iowa Court Rule 45.2(2) in turn requires a lawyer to properly account for a client's property and promptly deliver to the client any property the client is entitled to receive. Likewise, rule 45.7(4) requires attorneys to notify and provide accountings when they withdraw funds from advance fee payments, and rule 45.7(5) requires the refunding of unearned advance fees.

In the Gusta matter, McCuskey admittedly did none of these things. McCuskey accepted funds from the Gustas on three different occasions, did not render an accounting to them when he took these funds into his own income, and did not refund any unearned portion of

---

[5]The commission held that McCuskey's continued practicing of law following his suspension also violated rule 32:3.4(c). Rule 32:3.4(c) is entitled "Fairness to opposing party and counsel," and forbids an attorney from "knowingly disobey[ing] an obligation under the rules of a tribunal." Iowa R. Prof'l Conduct 32:3.4(c). However, we have indicated that the purpose of the rule is to ensure " '[f]air competition in the adversary system' through proper adherence to discovery and evidence rules." *Hearity*, 812 N.W.2d at 620 (quoting *Dunahoo*, 799 N.W.2d at 533). Therefore, we have declined to find attorneys in violation of this rule for continuing to practice after suspension unless the misconduct "undermined the competitive fairness of the adversary process or disadvantaged opposing counsel." *Id.*; *see also Dunahoo*, 799 N.W.2d at 533. No such record appears here. For this reason, we conclude that McCuskey did not violate rule 32:3.4(c).

those fees relating to activity that occurred after his suspension took effect. *See Vilmont*, 812 N.W.2d at 680 (finding an attorney violated rules 32:1.15 and 45.7 by failing to treat a retainer as an advance fee and failing to follow the rules governing advance fees); *Dunahoo*, 799 N.W.2d at 532 (finding an attorney violated rules 32:1.15(f) and 45.7(4) by not providing any contemporaneous accounting for withdrawals). Accordingly, we agree with the commission that McCuskey's failure to provide the Gustas with an accounting or to return unearned fees violated rules 32:1.15, 45.2(2), and 45.7.[6]

**F. Rule 32:1.3.** Finally, the Board alleged that McCuskey neglected the Gusta matter in violation of rule 32:1.3. That rule requires a lawyer to act with "reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. We have recognized neglect to " 'involve indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 59 (Iowa 2009) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 330 (Iowa 2009). It involves " 'a lawyer doing little or nothing to advance the interests of a

---

[6]The Board also alleged that McCuskey collected an unreasonable fee in violation of rule 32:1.5(a). The Board's theory, as set forth in its trial brief, is that *any* fee received by McCuskey on the Gusta matter would have been unreasonable because he was under suspension. The Board does not contend that McCuskey's fee would have been unreasonable for the work he actually did if he had not been under suspension. The Board cites no authority for its position. For present purposes, we conclude that an attorney who collects a fee for legal work performed while under suspension has collected an *unearned* fee in violation of rules 32:1.15 and 45.7 as discussed above, but not necessarily an *unreasonable* fee.

client after agreeing to represent the client.' " *Casey*, 761 N.W.2d at 59 (quoting *Moorman*, 683 N.W.2d at 551).

Although McCuskey did not answer the Board's complaint and the facts alleged therein were therefore properly deemed admitted, we nonetheless conduct an independent review of alleged ethical violations. *See Fields*, 790 N.W.2d at 795–96 (conducting an independent review even though the attorney failed to respond and the allegations against him were deemed admitted, and finding the attorney did not violate rule 32:1.1 as alleged by the Board). On our review, we are not persuaded at the required level of proof that McCuskey neglected the Gusta matter. From the exhibits, it appears there was some question whether the Gustas would be able to qualify for a Chapter 7 bankruptcy, and the clients and McCuskey may have jointly decided on a wait and see approach. It also appears that McCuskey responded reasonably promptly on the Gustas' behalf to creditor demands during that time.

Based upon our de novo evaluation of the record, we conclude the Board has shown by a convincing preponderance of the evidence that McCuskey violated Iowa Rules of Professional Conduct 32:1.4, 32:1.15(f), 32:1.16, 32:5.5(a) and 32:8.4(c) and Iowa Client Trust Account Rules 45.2(2) and 45.7. However, we find that the Board has not established violations of rules 32:1.3, 32:1.5 or 32:3.4(c).

**IV. Consideration of Appropriate Sanction.**

Having determined that McCuskey violated a number of disciplinary rules, we now consider the appropriate sanction. " 'There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case.' " *Casey*,

761 N.W.2d at 61 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007)).

> We have repeatedly held that the goal of our ethical rules is to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering. Important considerations include the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and our duty to uphold the integrity of the profession in the eyes of the public. In fashioning the appropriate sanction, we look to prior similar cases while remaining cognizant of their limited usefulness due to the variations in their facts. Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations, including uncooperativeness in the disciplinary investigation. Aggravating and mitigating circumstances are also important.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666 (Iowa 2012) (citations and internal quotation marks omitted).

The violations here center upon McCuskey's refusal to honor the terms of his September 30, 2009 temporary suspension. In addition, we have a single instance of trust account misconduct, including a failure to provide accountings, as well as the withdrawal of and failure to refund unearned fees.

"We consider all aggravating and mitigating circumstances." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 670 (Iowa 2008). "We have long held that an attorney has an obligation to cooperate with disciplinary authorities and that failure to respond to an investigation committee's request constitutes a separate act of misconduct subjecting the attorney to discipline." *Casey*, 761 N.W.2d at 60 (citing *Comm. on Prof'l Ethics & Conduct v. Horn*, 379 N.W.2d 6, 8 (Iowa 1985)). As in our recent *Hearity* case, McCuskey's "complete

failure to respond" is "a significant aggravating factor." *Hearity*, 812 N.W.2d at 622.

Prior discipline is another aggravating factor we consider in determining the appropriate sanction. *Marks*, 759 N.W.2d at 332. The Board urges us to take into account McCuskey's September 30, 2009 suspension as well as the follow-up suspension order of June 8, 2010. If these were separate from the present matter, we would do so. *See id.* (considering as an aggravating factor the respondent's unrelated temporary suspension from 2006 for failure to cooperate with a Board inquiry). However, treating them as aggravating factors here, when they are intertwined with the present case, would amount to double counting. We agree with the commission and the Board, however, that McCuskey's substantial legal experience is another aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 15 (Iowa 2012) (citing the respondent's "considerable professional experience as an attorney and judge" as an aggravating factor); *Kirlin*, 741 N.W.2d at 818 (noting as an aggravating circumstance "the fact that Kirlin is an experienced attorney"). Because McCuskey has not participated in these proceedings, we have no mitigating factors to discuss. *See Hearity*, 812 N.W.2d at 623 ("Because Hearity failed to participate in these proceedings, the record is devoid of evidence of any mitigating circumstances.").

We have considered cases in the past where attorneys continued to practice after their licenses were suspended, in addition to committing trust account violations. In *Netti*, an attorney represented a client before the Iowa Department of Revenue after having been suspended. 797 N.W.2d at 604. However, this was merely one of a long list of violations. *Id.* at 598–605. In discussing the sanction to be imposed, we focused on

the respondent's other violations, especially his "pattern of taking fees without doing the work he was hired to do," his "trust account violations," and his "knowing misrepresentations to the court." *Id.* at 606. We also emphasized the harm that Netti's actions caused to others. *Id.* at 606–07. We concluded that an indefinite suspension with no possibility of reinstatement for two years was warranted. *Id.* at 607.

In *D'Angelo*, an attorney met with a client, continued to take in fees, and held himself out as a lawyer while his license was suspended. 710 N.W.2d at 230–31, 233. But the respondent's other misconduct was quite extensive and included a two-year delay in responding to the Board's notices of complaints regarding four client matters, misrepresentations to the court, neglect, and intentional misappropriation of client funds. *Id.* at 234–236. D'Angelo also had a serious prior disciplinary record including an indefinite suspension with no possibility of reinstatement for three years based on another batch of violations. *Id.* at 229. In light of D'Angelo's prior disciplinary record and "the sheer number of times D'Angelo improperly moved client money from his client trust account to his operating account, we simply [could] not conclude the commingling of client funds was negligent, rather than intentional." *Id.* at 236. We also noted the harm D'Angelo's actions had caused his clients and concluded "the public w[ould] not be protected if D'Angelo [wa]s allowed to practice law again." *Id.* Accordingly, we revoked his license to practice law. *Id.* at 236–37.

In *Hearity*, an attorney appeared in one matter after he was suspended, collected and refused to refund an advance fee for an out-of-state matter that he could not handle, made a false statement to the court, and neglected two other matters. 812 N.W.2d at 616. Hearity also had a history of similar ethical misconduct and had completely failed to

respond to the Board. *Id.* at 620. We suspended his license indefinitely with no possibility of reinstatement for one year. *Id.* at 622.

We conclude here that an indefinite suspension with no possibility of reinstatement for one year is appropriate. The misconduct is not as extensive as in *Netti* or *D'Angelo.* In addition, McCuskey does not have Hearity's prior disciplinary record or his history of past violations. On the other hand, McCuskey's willful noncompliance with a suspension order, over a period of months and with respect to more than one representation, is a serious matter. Lawyer discipline is supposed to protect the public. One bedrock of the system is that a suspension will actually *be* a suspension. The system does not work when lawyers continue to make filings, meet with clients, send out legal correspondence, and take in fees even while they are supposed to be under suspension. Further, McCuskey's admitted failure to account for or refund the Gustas' money is another serious matter.

### V. Disposition.

Considering all the circumstances of this case, we suspend McCuskey's license to practice law in this state indefinitely with no possibility of reinstatement for one year. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). McCuskey must comply with Iowa Court Rule 35.22 dealing with the notification of clients and counsel.

McCuskey's prior temporary suspension of June 8, 2010, for failure to respond to the Board is terminated. *Hearity*, 812 N.W.2d at 623. However, McCuskey's temporary suspension for failure to meet a department of revenue obligation shall remain in effect until the separate requirements for ending that suspension are met.

Upon application for reinstatement, McCuskey must establish that he has not practiced law during the suspension period and that he has complied with the requirements of Iowa Court Rules 35.13 and 35.22. McCuskey also must demonstrate that he has met the requirements for ending the temporary suspension related to his unpaid department of revenue obligation. *See* Iowa Court Rule 35.13(9).

The costs of this action are taxed to McCuskey pursuant to Iowa Court Rule 35.26(1).

**LICENSE SUSPENDED.**