# IN THE SUPREME COURT OF IOWA

No. 14–1406

Filed December 26, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ROBERT ALLAN WRIGHT JR.,**

Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports respondent committed ethical violations and recommends a one-year suspension of the attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Alfredo Parrish of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry & Fisher LLP, Des Moines, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Robert Allan Wright Jr., alleging Wright violated multiple ethical rules. A division of the Grievance Commission of the Supreme Court of Iowa found Wright committed numerous violations and recommended a one-year suspension from the practice of law.

On our de novo review, we find the Board established by a convincing preponderance of the evidence that Wright practiced law while his license was suspended and committed various trust account violations. We also find the length of his temporary suspension for the same conduct met or exceeded the time we would have suspended his license, so we will not impose any further suspension for this conduct.

However, because Wright's license is under suspension for other conduct, he must serve that suspension before we will reinstate him to the practice of law.

## I. Prior Proceedings.

In 1981, we admitted Wright to the Iowa bar. On August 16, 2012, we entered an order temporarily suspending Wright's license for failing to comply with requests from the client security commission for documents needed to complete an audit of his client trust account. We suspended Wright's license until the client security commission certified Wright had complied with all requests. At this time, we have not lifted the August 2012 suspension.

On January 23, 2013, the client security commission sent the Board a notice, alleging a review of Wright's trust account showed activity consistent with an active practice of law. On January 29, Wright submitted a request to have the August 2012 suspension lifted and his law license reinstated. On February 5, the Board filed a petition

requesting we immediately suspend Wright's license under Iowa Court Rule 35.4, for posing a substantial threat of harm to the public predicated on the fact he may have been practicing law while suspended. On February 7, we granted the petition for interim suspension for threat of harm pending a final disposition of the disciplinary proceeding on this matter. We also required the chief judge of the district court to appoint a trustee to inventory Wright's client files, sequester all trust funds, and return all files, funds, and other property to Wright's clients. On February 8, Chief Judge Gamble appointed a trustee. We confirmed the appointment on February 11.

On April 29, the Board filed a complaint alleging Wright was engaged in the unauthorized practice of law and had violated the terms of his August 2012 suspension. Wright filed an answer on May 17. Wright admitted to some of the allegations, including that after his suspension he continued to practice law in one case, which he settled on the client's behalf. Wright also denied a number of the allegations, including that he continued to take on new clients, that he gave the appearance he was authorized to practice law, and that he failed to comply with the obligations of his August 2012 suspension.

On July 18, Wright filed a consent to suspension and the Board filed an unresisted motion to stay the disciplinary proceedings. On July 19, the commission granted the Board's motion and indefinitely continued the matter until we had the opportunity to review the consent to suspension. We rejected the consent to suspension on November 21.

In a matter unrelated to the present violations, on December 6, 2013, we suspended Wright's license for engaging in "representation of [his] clients in violation of conflict of interest rules and engaging in misrepresentation or deceit resulting in a client's financial loss." *Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 840 N.W.2d 295, 303 (Iowa 2013). We sanctioned Wright with a suspension of his license to practice law with no possibility of reinstatement for a period of no less than twelve months that will not begin until after we lift the August 2012 temporary suspension. *Id.* at 304.

On December 27, the Board filed an amendment to the complaint, alleging that on May 27, 2013, Wright engaged in another act of unauthorized practice of law. Wright denied this allegation. The parties filed a stipulation of facts on April 2, 2014. The parties stipulated to the procedural history of the case, to Wright's continued representation of a client after his August 2012 suspension, and to certain trust account activity after his suspension was in effect. The commission held a hearing on the complaints on May 5. The commission found by a convincing preponderance of the evidence Wright had

> violated rules 32:5.5 (prohibiting the unauthorized practice of law in any jurisdiction in which a lawyer is licensed); 32:1.16(a)(1) (prohibiting representation of a client when representation of the client will result in violation of the Iowa Rules of Professional Conduct); 32:1.4 (requiring a lawyer to inform his or her clients of decisions or circumstances that will impact the outcome of their cases); and 32:1.15(c) (prohibiting withdrawal of funds in client trust account prior to earning the fee).

> The commission also found violations of

> Iowa Court Rules 45.2(2) (requiring a lawyer to promptly account for client's property and promptly deliver to client any property to which the client is entitled); 45.7(5) (requiring unearned advance fees be refunded); and 45.2(3)(b)(3) (prohibiting withdrawals made to cash rather than by check payable to a named payee from client trust fund account).

The commission then recommended we suspend Wright's license with no possibility of reinstatement for one year.

## II. Scope of Review.

Neither the Board nor Wright filed an appeal of the commission's recommendation. By rule, we review the recommendation of the commission. Iowa R. Prof'l Conduct 35.11(1). We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 531–32 (Iowa 2013). The Board must prove violations by a convincing preponderance of the evidence. *Id.* at 532. "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

We deem factual matters admitted by an attorney in an answer to a complaint established without any further investigation into the supporting evidence in the record. *Id.* Stipulations of facts are also binding on the parties. *Id.* We interpret stipulations " 'with reference to their subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 528 (Iowa 2011)). If a stipulation concedes a rule violation, we will only find a violation if the facts are sufficient to support the stipulated violation. *Id.*

## III. Finding of Facts.

On August 10, 2012, Wright received an email regarding his client, Salome Macedo, from a workers' compensation case manager. On August 16, we temporarily suspended Wright's license for failing to comply with requests for documents from the client security commission. After we temporarily suspended Wright's license, Wright transferred almost all of his active cases to an attorney he once shared office space

with, Pamela Vandel. Vandel did all of the work on the transferred cases and gifted any fees she earned in Wright's cases back to Wright.

On August 26, ten days after we suspended Wright's license, Wright responded to the workers' compensation case manager's email. He asked the case manager to contact him about a resolution to the case or he would have to file something with the workers' compensation commissioner. Wright and the case manager continued to exchange emails for the next few months discussing the case. During this time, Wright sent Macedo for an independent medical evaluation and engaged in settlement discussions. Wright admits and stipulates that on December 20, he settled Macedo's case for $7982.70. Wright never told the case manager his license was under suspension.

Around the same time, Wright met with Rachena Johnson to discuss issues she was having regarding visitation with her children. Wright told Johnson he was not an attorney and was not authorized to practice law, but he was working with Vandel, an attorney who might be able to take her case. Wright attempted to have Vandel attend the weekend meeting with Johnson, but she was unavailable. Wright met with Johnson, again reminding her he would not be able to represent her, and gathered all the details of her contempt case against her former husband. Wright took $500 from Johnson and deposited the money into his trust account. Wright communicated the information to Vandel and she took Johnson on as a client. On January 10, 2013, Wright wrote a check directly to Jasper County for the filing fee in the contempt case.

This activity in Wright's trust account led the Board to believe Wright was practicing law during his August 2012 suspension and to his February 2013 interim suspension.

In late May 2013, Wright received a phone call from a former client, Jesse Taylor, asking Wright to meet with him. Wright was careful to tell Taylor and his stepdaughter that we suspended his license to practice law and that he could not represent anyone. Wright informed the pair he was working with Vandel and that he would pass all the information, including the documents Taylor brought to the meeting, to Vandel for her to make a determination about the merits of the case. Wright admitted he may have told Taylor and the child that they "may have something there," but that Vandel would have to be the one to evaluate the claim. Wright took $250 in cash from Taylor after explaining Taylor needed to pay Vandel to research the merits of the claim. Wright gave the cash to Vandel who eventually refunded the money after determining it would not be worth the effort to bring a claim against the child's school.

In Wright's answer, he admitted that after his August 2012 suspension, he deposited $73,860 in his trust account. He admitted in his answer that he overdrew his trust account in October 2012. In the stipulation filed by Wright and the Board, Wright stipulated he overdrew his trust account subsequent to the August 2012 temporary suspension. He also stipulated he withdrew money from the trust account and gave it to a former client to use to pay rent and utilities. Finally, in exhibit 11, a letter dated January 7, 2013, from Wright to the office of professional regulation, Wright refuted the finding that his trust account had a deficiency of over $20,000, but acknowledged it had a deficiency of $8891.27.

From these admissions and stipulations, we find Wright was depositing money in his trust account from sources other than client funds. We reach this conclusion because after August 2012 he was not

supposed to be practicing law. Although, the record shows he settled the Macedo case for around $8000, and he collected fees from Johnson for $500, these amounts are far less than the $73,860 he ran through his trust account.

Additionally, he made withdrawals from the trust account in excess of the funds in the account. There are no records showing why he made the withdrawals. Moreover, he withdrew the money from the trust account without providing a notice to his clients. Finally, he presented no evidence that the withdrawals from the trust account were for client expenses or for work he had done.

### IV. Violations.

**A. Iowa Rule of Professional Conduct 32:5.5(a).** Our rules of professional conduct provide that "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Iowa R. Prof'l Conduct 32:5.5(a). Wright violated this rule when he continued to work on Macedo's case after his August 2012 suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 254–55 (Iowa 2012) (representing a client after the court suspended an attorney's license violated Iowa Rule of Professional Conduct 32:5.5(a)).

We do not find he violated rule 32:5.5(a) in regards to the Johnson or Taylor matters. Wright informed both Johnson and Taylor that his license was under suspension and he could not represent them. He also told them Vandel would be handling their cases if she took them. His receipt of fees and depositing them in his account, before transferring them to Vandel, may be a basis for other violations. The mere fact he took the fees with the intent to give them to Vandel after he disclosed he could not represent them because his license was under suspension is

insufficient to find he was engaged in the unauthorized practice of law regarding Johnson and Taylor.

**B. Iowa Rule of Professional Conduct 32:8.4(c).** Our rules of professional conduct provide that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). A violation of this rule requires an attorney to act with the intent to deceive. *See McCuskey*, 814 N.W.2d at 255. By knowingly practicing law while his license was suspended, Wright deceived the workers' compensation case manager into believing Wright had the authority under the law to negotiate the settlement. This conduct violates rule 32:8.4(c). *See id.* (suspended attorney's conduct indicating to creditors he was working on client's bankruptcy was a violation of rule 32:8.4(c)).

**C. Iowa Rule of Professional Conduct 32:1.16(a).** Rule 32:1.16(a) states that a "lawyer shall not represent a client . . . if . . . the representation will result in violation of the Iowa Rules of Professional Conduct." Iowa R. Prof'l Conduct 32:1.16(a). Wright's representation of Macedo after his suspension violates this rule. *See McCuskey*, 814 N.W.2d at 255.

**D. Iowa Rule of Professional Conduct 32:1.4.** Rule 32.1.4 provides in relevant part:

> (a) A lawyer shall:
>
> . . . .
>
> (3) keep the client reasonably informed about the status of the matter;
>
> . . . .
>
> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Iowa Rules of Professional Conduct or other law.

Iowa R. Prof'l Conduct 32:1.4(a)(3), (5). Wright's continued representation of Macedo after his suspension, without informing Macedo of his suspension violates this rule. *See McCuskey*, 814 N.W.2d at 255–56 (finding the attorney's failure to inform his clients of his suspension violated rule 32:1.4(a)).

**E. Iowa Rule of Professional Conduct 32:1.15(c).** Rule 32:1.15(c) states, "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Iowa R. Prof'l Conduct 32:1.15(c). Wright was making withdrawals from his trust account after we suspended his license to practice law. This activity violates rule 32:1.15(c). *See McCuskey*, 814 N.W.2d at 256.

**F. Iowa Court Rule 45.1.** Rule 45.1 prohibits comingling of funds and only allows an attorney to withdraw funds from the trust account when earned. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 181 (Iowa 2014). Wright deposited funds received from Johnson in his trust account after his suspension. Although Vandel deducted these funds from the client's bill, Wright never should have put these funds in the trust account because the funds did not arise out of his practice of law. Moreover, he was writing checks to third parties, making cash withdrawals, and running a deficit in the trust account of at least $8891.27. We find he was using the trust account for purposes other than those allowed by this rule. This conduct violates rule 45.1. *See id.* (finding attorney's mishandling of trust account violated rule 45.1).

**G. Iowa Court Rule 45.2(2).** Rule 45.2(2) requires an attorney to promptly account for a client's property and promptly deliver to the client any property the client is entitled to receive. Iowa Ct. R. 45.2(2).

Wright's trust account records are devoid of any accounting. This conduct violates rule 45.2(2). *Id.*

**H. Iowa Court Rule 45.2(3)(*b*)(3).** Rule 45.2(3)(*b*)(3) provides cash withdrawals from trust accounts are prohibited. *Id.* r. 45.2(3)(b)(3). Exhibit 6 shows numerous cash withdrawals. This conduct violates rule 45.2(3)(*b*)(3).

**I. Iowa Court Rule 45.7(4).** Rule 45.7(4) requires attorneys to notify and provide accountings when they withdraw funds from advance fee payments. *Id.* r. 45.7(4). Wright's trust account records are devoid of any accounting. This conduct violates rule 45.7(4). *Id.*

**J. Iowa Court Rule 45.7(5).** Rule 45.7(5) provides "advance fee and expense payments are refundable to the client if the fee is not earned or the expense is not incurred." *Id.* r. 45.7(5). We have held an attorney who collects a fee for legal work while under suspension violates this rule. *See McCuskey,* 814 N.W.2d at 256 n.6. Wright violated rule 45.7(5).

**V. Sanction for These Violations.**

Wright's unauthorized practice of law, coupled with his numerous trust account violations is serious. His prior disciplinary record makes these violations even more egregious. *See Wright,* 840 N.W.2d at 303 (discussing Wright's prior disciplinary history).

In a recent case, we suspended the license of an attorney who continued to practice while his license was suspended and committed similar trust account violations as Wright for one year. *See McCuskey,* 814 N.W.2d at 251–52. McCuskey did not have a prior disciplinary history. *Id.* at 258. Wright does. Based on Wright's conduct and his prior disciplinary history, we believe his suspension should be more than one year but less than two years. We need not decide a definitive time

based upon our coordination of sanctions found in division VI of this opinion.

## VI. Coordination of Sanctions.

Wright has the following sanctions presently pending against him. The first is a temporary suspension issued on August 16, 2012, for failing to comply with requests for documents from the client security commission that were needed to complete an audit of his client trust account. The second is a temporary suspension issued on February 7, 2013, for threat of harm pending a final disposition of the disciplinary proceeding on this matter. The basis of this suspension was his unauthorized practice of law and trust account activity while under the August 2012 suspension. Both these suspensions are still in effect.

We issued the third suspension on December 6, 2013, for engaging in representation of his clients in violation of conflict of interest rules and engaging in misrepresentation or deceit resulting in a client's financial loss. In this suspension, we stated Wright's license to practice law was suspended with no possibility of reinstatement for a period of no less than twelve months, and it was to begin after we lifted the August 2012 temporary suspension. *Wright*, 840 N.W.2d at 303.

The last suspension is the one we issue today for Wright's continued practice of law while his license was suspended and for various trust account violations. Without deciding a definite time for this suspension, we noted this suspension should be more than one year, but less than two years.

Upon the filing of this opinion, we are terminating the August 16, 2012 suspension for failing to comply with the requests for documents from the client security commission that were needed to complete an audit of his client trust account. We reach this conclusion because when

we temporarily suspended Wright's license on February 7, 2013, for the unauthorized practice of law and irregularities in his trust account, we also entered an order appointing a trustee to gather all of Wright's trust account records and make an accounting to the client security commission. Under these circumstances, Wright has provided those records to the client security commission, thus, allowing us to lift the August 16, 2012 suspension.

Wright's February 7, 2013 temporary suspension for practicing while his license was suspended and various trust account violations was to continue pending the outcome of this disciplinary proceeding. Because this opinion concludes the pending disciplinary proceeding, we lift the February 7, 2013 suspension. We also found Wright violated our rules and that his license should be suspended because of these violations for a period of at least one year but less than two years. When we order an attorney's temporary suspension pending the outcome of a disciplinary proceeding for the same conduct, we should give credit for the time served for the temporary suspension if the time served equals or exceeds the appropriate sanction. *See Comm. on Prof'l Ethics & Conduct v. Halleck,* 325 N.W.2d 117, 118 (Iowa 1982). *But see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell,* 830 N.W.2d 355, 359–60 (Iowa 2013) (holding the time served during the temporary suspension for conduct intertwined in the current case did not equal or exceed the appropriate sanction, and therefore, the interim suspension "can be considered as a mitigating factor in determining the length and adequacy of a suspension as a sanction in the case").

We suspended Wright's license to practice law on February 7, 2013, for practicing law while his license was suspended and for various trust account violations. This period of temporary suspension

constitutes a sufficient minimum period of suspension for Wright's misconduct. Accordingly, we will consider Wright's suspension for practicing law while his license was suspended and for various trust account violations served.

These findings still leave Wright with the December 6, 2013 suspension of his license to practice law with no possibility of reinstatement for a period of no less than twelve months that does not begin until after we lift the August 2012 suspension. Upon the filing of this opinion, we lift the August 2012 suspension. Therefore, from the date of filing this opinion, Wright shall begin serving his suspension pursuant to the terms of our December 6 opinion.

### VII. Disposition.

After fully considering the matter, we lift the temporary suspensions of Wright's license to practice law issued on August 16, 2012, and February 6, 2013. We further find Wright practiced law while his license was under suspension and had various trust account violations. However, because his temporary suspension for the same conduct meets or exceeds the sanction we would impose, we will not sanction him any further for that conduct.

Finally, Wright shall begin serving the suspension we issued him in our December 6, 2013 opinion upon the filing of this opinion. Wright shall comply with all the conditions we imposed on him in our December 6, 2013 opinion. In addition, before we will reinstate his license the client security commission should certify that Wright has taken care of any deficiencies in his trust account. Costs of this action are assessed against Wright.

**LICENSE SUSPENDED.**