# IN THE SUPREME COURT OF IOWA

No. 10–0650

Filed February 4, 2011

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ROLLAND EUGENE KNOPF,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends a one-year suspension of attorney's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

R. Eugene Knopf, Newton, pro se.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Rolland E. Knopf, alleging violations of our ethical rules. A division of the Grievance Commission of the Supreme Court of Iowa entered into a stipulation with the respondent, wherein the parties agreed Knopf's conduct violated several of the rules of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct and recommended we suspend Knopf's license to practice law with no possibility of reinstatement for a period of one year. Upon our de novo review, we find Knopf's conduct violated our ethical rules and suspend his license to practice law indefinitely with no possibility of reinstatement for a period of three months.

## I. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010). The board must prove ethical misconduct by a convincing preponderance of the evidence. *Id.* "This burden is less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission." *Templeton*, 784 N.W.2d at 764.

## II. Findings of Fact.

Instead of holding a formal hearing, the commission decided the case on a joint stipulation filed by the board and Knopf on April 20, 2010. The stipulation contained a stipulation of the facts, the violations, and a recommendation of a one-year suspension. The parties also

stipulated to mitigating circumstances. Finally, the board and Knopf stipulated that, for context, the commission could consider exhibits submitted by the board. These exhibits comprised parts of the district court record in Knopf's criminal case.

As we have recently noted, we find stipulations of facts by the parties to be binding on them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803 (Iowa 2010). We interpret factual stipulations " 'with reference to their subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved.' " *Id.* at 803–04 (quoting *Graen's Mens Wear, Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 300 (Iowa 1983)). With regard to stipulations that concede violations, we have held that only "[i]f sufficient legal consideration supports this type of stipulation [is it] entitled to [enforcement]. [W]e are not bound to enforce these stipulations if they are unreasonable, against good morals, or contrary to sound public policy." *Id.* at 804. Nor are we bound by a stipulation to a sanction. We have long held that

> [o]ur rules require us to determine whether an attorney's conduct violates our ethical rules, and if it does, we must determine the proper sanction for the violation. Nowhere in our rules have we given the parties the authority to determine what conduct constitutes a violation of our ethical rules or what sanction an attorney should receive for such violation.

*Id.* (citation omitted).

With these principles in mind, we proceed to find the facts from the stipulation of facts, in light of the surrounding circumstances and the whole record. After doing so, we determine whether these facts establish a violation of our ethical rules. If we find a violation, we must determine the appropriate sanction. *Id.*

Rolland E. Knopf has practiced law in Newton, Iowa, since 1968. In January 2004, the Iowa Department of Revenue began an investigation into allegations Knopf failed to file state income tax returns for the years 1993 through 2002 and the year 2004. Knopf did not initially cooperate with the investigation, requiring the department to issue two administrative subpoenas. As a result of its investigation, in 2008, the State charged Knopf with four counts of fraudulent practice in the second degree for failing to file his income tax returns. In 2009, Knopf pleaded guilty to two counts of fraudulent practice in the second degree in violation of Iowa Code sections 422.25(5), 714.8(10), and 714.10 (2001) for his failure to file his 2001 and 2002 Iowa income tax returns. The district court sentenced Knopf to two five-year indeterminate terms, suspended the sentences, and placed Knopf on supervised probation for five years.

On October 19, 2009, the Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Knopf, alleging the respondent failed to file state income tax returns for the years 1993 through 2002 and the year 2004, and filed his 2003 return late without paying the taxes due. The complaint further noted that, in relation to his failure to file his 2001 and 2002 state income tax returns, the respondent pleaded guilty to two counts of fraudulent practice in the second degree. The board alleged this conduct violated DR 1–102(A)(3), (4), (5), and (6) of the Iowa Code of Professional Responsibility for Lawyers.[1]

---

[1]The board also alleges the respondent's failure to file state income tax returns violated Iowa Rule of Professional Conduct 32:8.4(a)–(d). Those rules did not become effective until July 1, 2005. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 793 n.1 (Iowa 2010). Therefore, because the conduct constituting the alleged violations occurred prior to July 1, 2005, we do not consider the application of the new rules.

Knopf subsequently appealed his convictions for fraudulent practice. His appeal, however, was ultimately dismissed for want of prosecution. On April 2, 2010, the board petitioned to amend its complaint against Knopf to include a charge that his failure to cure the default and the resultant dismissal of his appeal violated Iowa Rules of Professional Conduct 32:3.2 and 32:8.4(d).[2] The commission granted the board's petition.

In the stipulation filed April 20, 2010, the parties stipulated to Knopf's failure to file his Iowa income tax returns for the years 2001 and 2002. They further stipulated to the respondent's guilty plea and conviction of two counts of fraudulent practice in the second degree in violation of Iowa Code sections 422.25(5), 714.8(10), and 714.10. They also stipulated that the respondent appealed his conviction to the Iowa Supreme Court, but did not timely file his proof brief and designation of contents of the appendix. When he failed to timely remedy this, his appeal was dismissed for failure to cure the default. We now consider the import of these factual stipulations in light of our ethical rules.

## III. Violations.

Failure to file and pay state income taxes are undisputed violations of our ethical rules. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 797 (Iowa 2010). We agree with the commission that such conduct violates DR 1–102(A)(3) (prohibiting a lawyer from engaging in "illegal conduct involving moral turpitude"), DR 1–102(A)(4) (prohibiting a lawyer from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation"), and DR 1–102(A)(6) (prohibiting a

---

[2]Because this conduct occurred after July 1, 2005, we will consider this allegation in relation to the new rules contained in the Iowa Rules of Professional Conduct.

lawyer from engaging in "any other conduct that adversely reflects on the fitness to practice law") of the Iowa Code of Professional Responsibility for Lawyers. *Id.* (noting in the past we have held failure to file tax returns constituted conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5), but "unless the facts and circumstances establish a lawyer's failure to file taxes adversely impacted the functioning of the court, we would not find such conduct . . . to violate rule 32:8.4(d)").

The board also alleged Knopf violated Iowa Rules of Professional Conduct 32:3.2 and 32:8.4(d) for his failure to cure the default in his appeal. Rule 32:3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. The purpose of this rule is to prevent the "use of tactics that *unreasonably* delay litigation." 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 28.2, at 28-3 (3d ed. Supp. 2007). As noted in the comment to our rule:

> Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. . . . Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

Iowa R. Prof'l Conduct 32:3.2, cmt. 1.

In its brief, the board contended that it was apparent Knopf's failure to cure the default was based upon his intention to prolong his appeal for as long as possible. The commission's findings of fact appear to have adopted this view as well, stating that "the [r]espondent's efforts to stall the implementation of the consequences of [his] offenses . . .

militate in favor of a sanction on the harsher end of the range" of possible sanctions.

Upon our de novo review, however, we conclude the board has failed to prove a violation of this rule. Nothing in the stipulation or the exhibits supports a finding that Knopf's dilatory handling of his appeal was done for the purpose of frustrating the implementation of his sentence. A review of the appellate record exhibits reveals that, while initially Knopf had some problems with his combined certificate, he ultimately corrected the problem and was permitted to move forward with his appeal. In the end, however, his appeal was dismissed because he failed to timely file his appellate proof brief and designation of the contents of the appendix. The reason or motivation for his failure to cure the default is not clear from the record, and it would be speculative to make a factual finding that his actions were done solely for his convenience or for the purpose of frustrating the implementation of his sentence. Moreover, the parties did not stipulate to the reason for Knopf's neglect of his appeal.

That is not to say, however, that his actions did not violate rule 32:8.4(d). Rule 32:8.4(d) states that it is misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). Neglect of an appeal resulting in its dismissal constitutes conduct prejudicial to the administration of justice. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 101 (Iowa 2010). Ignoring deadlines and orders, which results in default notices from the clerk of court, hampers " 'the efficient and proper operation of the courts' " and therefore is prejudicial to the administration of justice. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005) (quoting *Iowa Supreme Ct. Bd.*

*of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999)); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 284 (Iowa 2010) (finding neglect of four appeals resulting in dismissal of those appeals constituted conduct prejudicial to the administration of justice).

### IV. Sanctions.

We have repeatedly held that the goal of our ethical rules is " 'to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering.' " *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820 (Iowa 2004) (quoting *Comm. on Prof'l Ethics & Conduct v. Gill*, 479 N.W.2d 303, 306 (Iowa 1991)). In deciding an appropriate sanction, we consider " 'the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 338 (Iowa 2000)). Consideration of aggravating and mitigating circumstances present in the disciplinary action is also important. *Id.*

" 'It is as wrong for a lawyer to cheat the government as it is for him to cheat a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006) (quoting *Comm. on Prof'l Ethics & Conduct v. Strack*, 225 N.W.2d 905, 906 (Iowa 1975)). We have previously imposed a sanction of license suspension from sixty days to three years for an attorney's failure to file income tax returns. *See Fields*, 790 N.W.2d at 799 (citing cases); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Neuwoehner*, 595 N.W.2d 797, 797–98 (Iowa 1999) (imposing three-month suspension for failure to file income tax returns

for three years). "[W]e have considered it an aggravating factor for an attorney to have failed to file tax returns for an extended period of time." *Fields*, 790 N.W.2d at 799. In this case, the parties have stipulated that Knopf failed to file his state income tax returns for two years.

In addition to his failure to file income tax returns, Knopf's failure to cure the default notice on his appeal constituted neglect and was prejudicial to the administration of justice. *See Hoglan*, 781 N.W.2d at 286 (finding essence of failure to prosecute appeals resulting in dismissal was neglect). "The sanction for attorney misconduct involving neglect typically ranges from a public reprimand to a six-month suspension." *Fields*, 790 N.W.2d at 798. The particular sanction imposed depends upon "whether there are multiple instances of neglect, other additional violations, or a history of past disciplinary problems." *Id.*

In this case, the parties have stipulated that Knopf has never had an ethics complaint filed against him by a client. The parties further stipulated that Knopf has cooperated with the board in resolving this matter. Both of these factors mitigate in favor of a less severe sanction.

The parties have also stipulated that health problems surrounding Knopf and his family, which have affected his ability to cope with the "foregoing matters,"[3] and the winding down of Knopf's practice of law are mitigating circumstances to be considered in formulating an appropriate sanction. We have previously held that, although they do not excuse misconduct, personal illnesses "can be mitigating factors and influence

---

[3]Because the parties have stipulated that Knopf has cooperated with the board, we conclude that by "foregoing matters" the parties were stipulating that Knopf's ability to file his income tax returns and to attend to his appeal were affected by the medical problems surrounding himself and his family. This conclusion is supported by Knopf's response to the board's interrogatories. When asked to "[s]tate, with respect to each of the years 1993 through 2004, why [he] did not timely file [his] state income tax returns," Knopf replied that there were "[m]any reasons both personal, financial and health."

our approach to discipline." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson*, 595 N.W.2d 132, 134 (Iowa 1999) ("As for [the attorney's] depression and alcoholic conditions, we do not recognize such problems as an excuse of unethical conduct.").

In considering personal illnesses in our approach to discipline, we are concerned with the attorney's fitness to practice law and, as a mitigating factor, with the attorney's efforts to overcome, when possible, his or her personal afflictions. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 295 (Iowa 2002) ("[W]e consider . . . personal afflictions and subsequent recovery efforts in the imposition of sanctions, both in terms of fitness to practice law and as mitigating circumstances."). Here, we are unable to discern from the stipulation or the record to what extent Knopf's health problems and those of his family will continue to affect his ability to cope and, therefore, affect his fitness to practice law. We are also unable to discern to what extent the respondent has made efforts to address these health issues, if possible. Therefore, we do not consider Knopf's response to his personal illness as a mitigating factor.

In light of the above facts and circumstances, and upon our consideration of the goals of our ethical rules, mitigating and aggravating circumstances, and our survey of other disciplinary cases, we conclude Knopf's conduct warrants a three-month suspension. In addition, based upon the parties' stipulation, we conclude it is necessary for the respondent to provide medical verification of his fitness to practice law prior to any reinstatement. *See, e.g., Hoglan*, 781 N.W.2d at 287 (holding attorney, who neglected several clients while suffering from debilitating

back problems, was required to provide medical verification of his fitness to practice law prior to reinstatement).

### V. Conclusion.

We suspend Knopf's license to practice law in this state indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3). Prior to any reinstatement, Knopf must provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law. Knopf must also establish that he has not practiced law during the suspension period and has complied in all ways with the requirements of rule 35.13 and the notification requirements of rule 35.22. Costs of this action are taxed to Knopf pursuant to rule 35.26.

**LICENSE SUSPENDED.**