# IN THE SUPREME COURT OF IOWA

No. 13–0480

Filed October 11, 2013

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**BRIAN JESSE NELSON,**

      Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed ethical infractions and recommends a suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington, Des Moines, and Margaret E. Johnson, Des Moines, for complainant.

Van M. Plumb, Des Moines, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Brian Jesse Nelson, alleging violations of the Iowa Rules of Professional Conduct, Iowa Court Rules, and Attorney Disciplinary Board Rules of Procedure. A division of the Grievance Commission of the Supreme Court of Iowa found Nelson's conduct violated numerous provisions of the rules, recommended we defer a two- to six-week suspension of Nelson's license to practice law until the filing of a future substantiated complaint with the Board within three years from our decision, and recommended restitution. We are required to review the commission's report. *See* Iowa Ct. R. 35.11. Based on our de novo review, we conclude the Board established by a convincing preponderance of the evidence that Nelson violated our rules. However, we disagree with the commission's recommended discipline and suspend Nelson's license to practice law for thirty days.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 739 (Iowa 2013). The Board must prove the attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* " 'A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012)). This places a burden on the Board that is higher than the burden in civil cases but lower than in criminal matters. *Id.* We respectfully consider the commission's recommendations; however, they are not binding upon us. *Id.*

Factual matters admitted by an attorney in an answer are deemed established, regardless of the evidence in the record. *Stowe*, 830 N.W.2d at 739. Additionally, stipulations of facts are binding on the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 528 (Iowa 2011). We interpret such stipulations "with reference to their subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved." *Id.* (internal quotation marks omitted). However, with stipulations conceding rule violations, we will only enforce the stipulation if there is sufficient legal consideration. *Id.* The court is " 'not bound to enforce these stipulations if they are unreasonable, against good morals, or contrary to sound public policy.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 804 (Iowa 2010)).

## II. Findings of Fact.

On our de novo review and in light of the facts stipulated by the parties, we find the facts as follows. In 1999, Nelson was admitted to the Iowa bar. As a new attorney, he worked as an associate in a private firm. When the firm split, Nelson started his own practice. Since approximately July 2000, he has been a sole practitioner in Des Moines, sharing office space with several other lawyers over the years.

When Nelson first became a sole practitioner, he took court-appointed cases, and his workload was slow. However, over the next three years, Nelson developed a high-volume practice in which he concentrated his efforts on handling criminal matters. Nelson estimated that by 2008, two-thirds of his practice involved "doing anywhere from 100 to 120 OWIs a year."

When taking on a new client matter, Nelson's standard procedure was to enter a written fee agreement. However, in the fall of 2009,

Nelson admits he abandoned this business practice because personal issues began negatively affecting his professional life. Specifically, Nelson and his wife started having marital problems. He moved out of the marital home on Thanksgiving Day 2009 and then started drinking. By his own admissions, Nelson "knew [he] was drinking too much," "went drinking pretty hard" after the separation, and "drank hard as heck for quite awhile." He and his wife ultimately divorced.

Nelson indicated that during this time, his practice began slipping through the cracks. He reduced his caseload to approximately five or six matters, abandoned his practice, and retreated to his parents' farm in southwest Iowa. He spent his time doing manual labor for a high school friend who owns a construction company.

The Board received six complaints regarding Nelson's professional activities, or lack thereof, between August 19 and September 3, 2010. On October 12, 2012, the Board filed a six-count complaint against Nelson, alleging violations of the Iowa Rules of Professional Conduct, Iowa Court Rules, and Attorney Disciplinary Board Rules of Procedure. The parties filed a joint stipulation on December 24. Therein, Nelson admits several of the allegations in the complaint are true and concedes multiple rule violations occurred during his representation of various clients. Each count and the accompanying facts are detailed below.

**A. Bump Representation (Count I).** The Board received a complaint on July 9 from another attorney, who was concerned about Nelson's professional conduct. Assistant Washington County Attorney, Shawn Showers, was prosecuting one of Nelson's clients, Daniel Bump. On September 16, 2009, Nelson entered his appearance to represent Bump in the criminal matter. Subsequently, both Nelson and his client missed court proceedings, including a suppression hearing on May 12

and a pretrial conference on June 2. Thereafter, the district court issued a warrant for Bump's arrest for failure to appear in court, and he was arrested on July 12. In his complaint, Showers also reported that Nelson was not responding to communication from Showers or the district court.

The Board sent a letter to Nelson, requiring a response to the complaint pursuant to rule 32:8.1(*b*). Nelson did not respond to the Board's letter. The Board alleged that such conduct violated Iowa Court Rule 34.7 (failing to respond to the Board's notice) and Iowa Rules of Professional Conduct 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:1.4 (failing to properly communicate with a client), 32:1.16(*c*) (failing to properly terminate the attorney-client relationship), 32:3.4(*c*) (knowingly disobeying an obligation under the rules of a tribunal), 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority), and 32:8.4(*d*) (engaging in conduct prejudicial to the administration of justice). The commission found Nelson violated each of these rules.

**B. Hackman Representation (Count II).** Count II deals with a complaint received by the Board on June 21, 2010. The supreme court clerk notified the Board that Nelson failed to cure a default regarding an appeal. Nelson failed to file and serve the combined certificate in the appeal within the period required by the Iowa Rules of Appellate Procedure. The clerk notified Nelson the appeal would be dismissed unless he cured the default within fifteen days. Nelson failed to act so the appeal was dismissed and procedendo issued on July 13. The Board sent a letter to Nelson, requiring a response to the complaint pursuant to rule 32:8.1(*b*) but he did not respond.

The Board alleged that such conduct violated Iowa Court Rule 34.7 (failing to respond to the Board's notice) and Iowa Rules of Professional Conduct 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:3.2 (failing to make reasonable efforts to expedite litigation consistent with the interests of the client), 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority), and 32:8.4(*d*) (engaging in conduct prejudicial to the administration of justice). The commission found Nelson violated each of these rules.

**C. Lenihan Complaint (Count III).** Another complaint came from Tom Lenihan, an attorney who shared office space with Nelson. Lenihan became concerned about Nelson's abandonment of his practice. In a complaint to the Board dated July 16, Lenihan reported that Nelson had been absent from the office for a number of weeks and did not keep regular office hours. His telephone and cellular voicemail system were full and had not been accepting new messages for weeks. Nelson had removed his computer and other equipment from his office. His unopened mail appeared to be excessive. Clients and court administration had not been able to contact Nelson. Several clients were arrested for failure to appear at hearings because Nelson was nonresponsive and did not provide notice of their hearing dates.

We suspended Nelson's license on July 23, 2010, for abandoning his practice. The Board alleged in its complaint that such conduct violated Iowa Rules of Professional Conduct 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:1.4 (failing to properly communicate with a client), 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority), and 32:8.4(*d*) (engaging in conduct prejudicial to the

administration of justice). The commission found Nelson's conduct violated each of these rules.

**D. Nolte Representation (Count IV).** Joshua Nolte entered a verbal agreement for representation by Nelson on April 29, 2010, regarding criminal charges. Joshua's wife, Julia, did not have any agreement to be represented by Nelson. Nolte remitted the requested fee of $2500 to Nelson, who deposited the funds in the client trust account for representation regarding a proffer agreement only.[1] The parties stipulated that an additional retainer for $2500 was due before arraignment. Nolte did not remit that amount. Nelson did not provide Nolte any accounting regarding how the funds would be disbursed as they were earned. The result was a fee dispute, which both parties agree could have been avoided had there been a written fee agreement. Nolte also did not receive any refund when Nelson ceased the representation.

Nolte stated in his complaint that Nelson indicated there was no warrant for either Nolte or his wife's arrest. Nelson countered by telling the Board he repeatedly told Nolte there was a warrant issued for his arrest. Nolte and his wife were arrested on June 11, 2010, posted bond of $3620, and paid $131 to retrieve their vehicle from the impound lot. Both were unable to get into contact with Nelson while in custody. Nelson continued to be nonresponsive to calls and personal messages in the form of sticky notes left in his office. The couple eventually went to a

---

[1]There is debate concerning the scope of the representation, whether it was for handling the full case or just the proffer agreement. Nelson testified he only agreed to represent Nolte in the proffer agreement for the first $2500. Nolte argued in his testimony that the parties agreed to full representation at the flat rate of $2500. Regardless, the joint stipulations indicate the representation was for the proffer agreement only.

bar, where they were told they could find Nelson and did. Nelson said there were no arrest warrants.

Thereafter, Nelson did appear at one hearing but then disappeared once again. Nolte indicated he had left at least twenty voicemails for Nelson, none of them being returned. To hire a new attorney, Nolte paid $1800, $109 in jail fees, $212 for impound fees, and around $3654 for bond, totaling $5775. Nolte was forced to pay these expenses because Nelson was unable to handle his case.

On July 16, the Board sent a letter to Nelson about Nolte's complaint. Nelson did not respond. The Board alleged that such conduct violated Iowa Court Rule 34.7 (failure to respond to the Board's notice) and Iowa Rules of Professional Conduct 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:1.4 (failing to properly communicate with a client), 32:1.5 (making an agreement for, charging, or collecting an unreasonable fee and failure to communicate the scope of representation), 32:1.16(*d*) (failing to take the necessary steps to protect a client's interest on termination of the attorney–client relationship), and 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority). Additionally, the Board alleged violations of Iowa Court Rules 45.7(4) (failing to notify a client upon the withdrawal of a fee or expense from a trust account) and 45.10(3) (withdrawing amounts from the trust account in connection with a flat fee). The commission found Nelson violated each of these rules.

**E. Thomas Representation (Count V).** The Board received a client complaint from Matthew Thomas, which was filed on August 13. In November 2009, Nelson agreed to represent Thomas in a criminal matter and had accepted and deposited in the client trust account a

$2000 retainer. There is no evidence of a written fee agreement, only evidence Nelson told Thomas he would undertake the representation.

Nelson entered his appearance and then a written arraignment on Thomas's behalf. The written arraignment was unacceptable to the court because it failed to reflect Thomas underwent a substance abuse evaluation. In reality, Thomas had timely completed the required evaluation, but Nelson failed to remit the documentation to the court. Resultantly, the district court issued a warrant for Thomas's arrest, which was valid only if proper arraignment was not filed by December 7. Nelson did not comply with the deadline, resulting in the issuance of the first arrest warrant. Thereafter, despite Thomas repeatedly calling and visiting Nelson's office to inquire about his court dates and the status of his case, Nelson made no contact. Eventually, the court issued a second warrant for Thomas's failure to appear in court, which occurred because Nelson failed to notify Thomas of his court dates. Thomas was eventually arrested on these warrants on August 2, 2010.

Nelson was removed as counsel by court order on August 10, 2010, due to the temporary suspension of his license. Nelson did not provide Thomas with a final disbursement, although he did discuss prior to being retained how the retainer would be disbursed. The Board sent a letter to Nelson regarding Thomas's complaint, to which Nelson did not respond. In its complaint, the Board alleged such conduct violated Iowa Rules of Professional Conduct 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:1.4 (failing to properly communicate with a client), 32:1.5(*b*) (failing to communicate the scope of representation), 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority), 32:1.15 (failing to properly safekeep a client's property), and 32:1.16 (failing to

properly terminate representation). Additionally, the Board alleged violations of Iowa Court Rules 45.7(4) (failing to notify a client upon the withdrawal of a fee or expense from a trust account) and 45.10(3) (withdrawing amounts from the trust account in connection with a flat fee), as well as Iowa Court Rule 34.7 (failing to respond to the Board's notice). The commission found Nelson violated each of these rules.

**F. Muscato Representation (Count VI).** The Board received the final complaint on August 31, 2010, from client Kathryn Muscato. Nelson verbally agreed to represent Muscato in a criminal matter for $2500, which she promptly remitted for full representation. Nelson testified that in representing Muscato, he entered a written appearance, filed a plea and a waiver of preliminary hearing, sent out the Iowa Department of Transportation (IDOT) hearing request letter for staying the revocation of her driving privileges, and attended a rescheduled arraignment. Several times during the representation, Muscato called Nelson but received no response. At one point, Muscato received notice of a court date; Nelson did not show up so it was rescheduled. Then, she received notice by mail of the IDOT phone hearing and failed to reach Nelson by phone about it, so she went to Nelson's office for the hearing. He was there and represented her. Muscato testified that she then authorized Nelson to receive all court communications on her behalf.

Nelson told the Board that at that time, he gave Muscato notice of her pretrial conference date, which he allegedly attended but she did not. Muscato indicates that she never received such notification. Muscato states she missed the court date as a result, Nelson did not represent her at the court date, the court issued an arrest warrant, and then she was subsequently arrested on July 6, 2010. Muscato secured other counsel, fired Nelson, and requested a refund of the money she paid him.

Muscato paid $1500 for the new attorney. She has received no accounting or refund from Nelson.

The Board sent a letter to Nelson on July 16, 2010, but did not receive a response. The Board alleged such conduct violated Iowa Rules of Professional Conduct 32:1.3 (failing to act with reasonable diligence and promptness in representing a client), 32:1.4 (failing to properly communicate with a client), 32:1.5(*b*) (failing to communicate the scope of representation), 32:1.16 (failing to properly terminate representation), 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority), and 32:8.4(*d*) (engaging in conduct prejudicial to the administration of justice). Additionally, the Board alleges violations of Iowa Court Rules 45.7(4) (failing to notify a client upon the withdrawal of a fee or expense from a trust account) and 45.10(3) (withdrawing amounts from the trust account in connection with a flat fee), as well as Iowa Court Rule 34.7 (failing to respond to the Board's notice). The commission found Nelson violated each of these rules.

### III. Interim Suspensions.

On July 23, 2010, the court approved a disability suspension of Nelson's license because he abandoned his practice. The disability suspension order authorized the chief judge of the fifth judicial district to appoint a trustee for Nelson's practice and set a show-cause hearing under Iowa Court Rule 35.16(2) for August 26 before our court. Nelson failed to appear for the show-cause hearing. Accordingly, we filed an order on August 27, continuing the suspension and trusteeship until further order of this court. On May 4, 2011, we issued a separate suspension order to Nelson for his failure to respond to the Board. We entered an order lifting both suspensions on July 31, 2012. Since that

date, Nelson has been practicing law without incident. The interim suspension lasted two years and eight days.

### IV. Ethical Violations.[2]

**A. Diligence: Rule 32:1.3.** Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. Accordingly, an attorney must handle a client matter in a "reasonably timely manner." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 (Iowa 2011). Violations occur when an attorney fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 495 (Iowa 2010) (holding the attorney violated rule 32:1.3 for the dilatory handling of estates, despite receiving notices and inquiries from beneficiaries); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 150–53 (Iowa 2010) (finding the attorney violated rule 32:1.3 by failing to make filings and not appearing at the scheduled trial).

Nelson failed to exercise due diligence by not representing his clients in a reasonably timely manner. He neglected to inform his clients of and did not attend three pretrial hearings for Bump, a hearing for Thomas, and a court date for Muscato, resulting in the court's issuance of warrants and the subsequent arrest of these clients. Moreover, he failed to file a valid written arraignment and substance abuse evaluation

---

[2]The commission found Nelson violated Iowa Rule of Professional Conduct 32:3.4(*c*), which the Board did not include in its complaint. The United States Supreme Court has held adversary disciplinary proceedings are quasi-criminal in nature, and the board must disclose the charges against an attorney before the proceedings commence. *In re Ruffalo*, 390 U.S. 544, 551–52, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122–23 (1968). The failure to do so deprives the attorney of procedural due process. *Id.*

in Thomas's matter, resulting in the issuance of two more arrest warrants. He failed to notify Nolte of an outstanding arrest warrant. He failed to file and serve the combined certificate to cure a default in the Hackman appeal. Additionally, Nelson was slow, at best, to act in representing his clients. Most distressing, he did not respond to calls from clients who were sitting in jail simply because their attorney's own ineptitude prompted the court's issuance of warrants for their arrest. The commission found Nelson violated this rule. We concur and find, based on his own admissions and a plethora of evidence in the record, Nelson violated rule 32:1.3 by failing to diligently represent his clients on multiple occasions.

**B. Communication: Rule 32:1.4.** The Board also alleged violations of rule 32:1.4. Rule 32:1.4(*a*) requires an attorney to:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these rules;

> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

> (3) keep the client reasonably informed about the status of the matter;

> (4) promptly comply with reasonable requests for information; and

> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Iowa Rules of Professional Conduct or other law.

Iowa R. Prof'l Conduct 32:1.4(*a*). Rule 32:1.4(*b*) adds that a lawyer must "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* r. 32:1.4(*b*). Violations of this rule occur when an attorney neglects to keep a client informed about the status of the case or does not respond to a

client's attempts to contact the attorney about the case. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 547 (Iowa 2012) (finding the attorney failed to keep the client informed about the status of her divorce case and did not respond to her attempts to contact him regarding the case, constituting neglect and the failure to advance or protect the client's legal interest).

Nelson neither initiated nor returned client phone calls, despite requests by clients that he do so. He did not respond to emails and calls from prosecutors and the courts. He did not notify clients of court dates, resulting in their failure to appear, the issuance of warrants, and subsequent arrests. He was inaccessible to clients who called while they were in jail due to the warrants. His voicemails were full for weeks so clients could not leave him messages. He did not open his mail. He abandoned his office, so clients were unable to make in-person visits. Clients resorted to leaving sticky notes in his office and, on one occasion, tracking him down at the local bar to try to obtain information about their cases.

The commission found Nelson violated rule 32:1.4. The record, as well as Nelson's own admissions, leads us to conclude Nelson violated rule 32:1.4 numerous times in his representation of multiple clients. Therefore, we find the Board proved violations of rule 32:1.4 by a convincing preponderance of the evidence.

**C. Failure to Communicate Regarding Fees: Rule 32:1.5(*b*).[3]** The Board also alleged Nelson violated rule 32:1.5(*b*) governing fees. The

---

[3]The commission did not make a specific finding under this rule. However, the commission stated that it found all "ethical violations admitted in the stipulation and charged in each count of the complaint are established by a convincing preponderance of the evidence when the stipulation, the hearing testimony, and the documentary evidence admitted at the hearing are considered."

commission did not make a finding as to this violation. Rule 32:1.5(*b*) requires an attorney to communicate with the client, preferably in writing, regarding "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible." Iowa R. Prof'l Conduct 32:1.5(*b*). An attorney's failure to do so violates this rule. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 533 (Iowa 2011).

The record demonstrates Nelson did not enter written fee agreements with at least two clients, including Muscato and Nolte. Nelson testified to that effect. Moreover, he failed to communicate the fee arrangements, resulting in confusion and disputes in both matters. Nelson admitted that in the Thomas and Muscato matters he did not respond or send a final disbursement summary, but did inform the clients prior to retention of how the funds would be disbursed. Based on the record, we find the Board established by a convincing preponderance of the evidence that Nelson violated rule 32:1.5(*b*).

**D. Safekeeping Property: Rule 32:1.15.** The Board alleges Nelson violated rule 32:1.15, generally, when representing Thomas and Nolte. The commission did not make a specific finding under this rule.

This rule requires "a lawyer to place client funds, including a retainer, in a trust account, account for those funds, and when requested to do so, properly deliver a client's funds to the client." *Netti*, 797 N.W.2d at 602. There is no evidence that Nelson commingled client funds. *See* Iowa R. Prof'l Conduct 32:1.15(*a*). The record demonstrates Nelson properly deposited the retainers remitted to him by Nolte and Thomas into the client trust account. However, the record shows Nelson failed to "promptly render a full accounting" to clients. Iowa R. Prof'l Conduct 32:1.15(*d*). Nelson did not mail any accounting to either Nolte

or Thomas. It is not clear whether either client proactively requested an accounting—a prerequisite to the accounting rules. What is more apparent is Nolte requested the return of his $2500 retainer, to which Nelson agreed to remit the funds within ten days of their meeting at the bar. Nelson did not follow through. Thus, on our de novo review of the record, we find this is sufficient evidence that Nelson violated rule 32:1.15(*a*).

**E. Failure to Properly Terminate Representation: Rule 32:1.16.** Rule 32:1.16 governs the lawyer's conduct in terminating or failing to withdraw representation. Rule 32:1.16(*a*) defines circumstances in which it is mandatory for an attorney to withdraw as counsel, including having a physical or mental condition materially impairing the lawyer's ability to represent his clients. Iowa R. Prof'l Conduct 32:1.16(*a*)(2). Rule 32:1.16(*b*) addresses those permissive situations in which an attorney may terminate representation. The following two rules deal with the process of withdrawing. Rule 32:1.16(*c*) requires the lawyer to comply with the law when withdrawing, as follows:

> A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

Iowa R. Prof'l Conduct 32:1.16(*c*).

> The final provision reads:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by law.

Iowa R. Prof'l Conduct 32:1.16(*d*).

The Board alleges violations of rule 32:1.16, generally, when representing Thomas and Muscato, as well as specific allegations of violating rule 32:1.16(*c*) in the Bump matter and rule 32:1.16(*d*) in the Nolte representation. The commission found Nelson violated rule 32:1.16(*c*).

Based on his admissions and the evidence in the record, it is clear Nelson violated these rules on multiple occasions. He failed to promptly deliver client files to other attorneys, who would be able to competently represent the clients. *But cf. Netti*, 797 N.W.2d at 603 (finding an attorney who did not promptly, but eventually did deliver client files to successor counsel or the client did not violate the rule). Moreover, there is no evidence he made any arrangements to protect the interests of his clients. Nelson simply abandoned his practice. Thus, we find the Board established by a convincing preponderance of the evidence that Nelson's conduct repeatedly breached rule 32:1.16.

**F. Disobeying an Obligation Under the Rules of a Tribunal: Rule 32:3.4(*c*).** The Board alleged Nelson violated rule 32:3.4(*c*) during his representation of Bump. Rule 32:3.4(*c*) prohibits any attorney from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Iowa R. Prof'l Conduct 32:3.4(*c*); *see Cunningham*, 812 N.W.2d at 548 (finding an attorney who failed to obey a court order to comply with discovery requests violated the rule). There is insufficient information in the record to determine whether Nelson violated this rule. Therefore, we find no violation of this rule.

**G. Failure to Respond to the Board and to Disciplinary Authority: Rules 34.7 and 32:8.1(*b*).** Rule 32:8.1(*b*) states a lawyer

shall not "knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(*b*). "Knowingly" means "actual knowledge of the fact in question" and "may be inferred from circumstances." *Id.* r. 32:1.0(*f*). We have inferred an attorney's knowing failure to respond when there is proof the attorney received the Board's inquiries and yet failed to provide the information sought. *Netti*, 797 N.W.2d at 604–05. The Board's own rules also require an attorney's timely cooperation with an investigation, as stated in Iowa Court Rule 34.7.

There is no doubt Nelson failed to respond to a lawful demand for information from the Board regarding the various ethical complaints.[4] Having the act element satisfied, we must ask whether he "knowingly" failed to respond to the Board.

We find Nelson was aware of the Board's requests for information and knowingly failed to comply. In his testimony, Nelson admitted that several attorney friends sat down with him and warned that he needed "to respond to these ethical complaints." Nelson then waited six months to reply to the complaints—an egregious delay from the July 16, 2010 date upon which the Board sent its letter, to his response in April or May 2012. Accordingly, we find Nelson's failure to promptly comply with the Board's investigation violates both rule 32:8.1(*b*) and Iowa Court Rule 34.7. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 289 (Iowa 2009) (holding an attorney violated 32:8.1(*b*) by failing "to promptly respond to inquiries from the Board").

---

[4]In fact, his failure to respond to the Board's inquiries is the reason why we temporarily suspended Nelson's license to practice law on May 4, 2011.

**H. Attorney Misconduct: Rule 32:8.4(*d*).** Rule 32:8.4(*d*) indicates it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(*d*). Conduct is prejudicial only when it impedes " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Dunahoo*, 799 N.W.2d at 534 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)). This means the act must offend "the well-understood norms and conventions of the practice of law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010).

An attorney's failure to timely cooperate with disciplinary authorities is prejudicial to the administration of justice, violating not only rule 32:8.1 but also rule 32:8.4(*d*). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 60 (Iowa 2009). An attorney who ignores deadlines and orders, resulting in default notices from the clerk of court, impedes "the efficient and proper operation of the courts" and thus, is prejudicial to the administration of justice. *Knopf*, 793 N.W.2d at 530; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 283–84 (Iowa 2010) (observing the attorney's neglect of four appeals resulting in the dismissal of those appeals was conduct prejudicial to the administration of justice). *But see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587–88 (Iowa 2011) (holding the attorney's failure to promptly return unearned fees and render an accounting to the client was not prejudicial to the administration of justice and did not violate rule 32:8.4(*d*)). Engaging in a clear conflict of interest and disobeying a court order is also prejudicial to the administration of justice. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 98 (Iowa 2010). Other examples include

paying an adverse witness for information concerning the opponent's case preparation, "demanding a release in a civil action as a condition of dismissing criminal charges, and knowingly making false or reckless charges against a judicial officer." *Templeton*, 784 N.W.2d at 768.

Nelson violated this rule by not responding to communication from the Board, as well as court administration, attorney peers, and clients. *See Casey*, 761 N.W.2d at 60 (finding attorney violated rule 32:8.4(*d*) when he did not timely respond to Board inquiry). Moreover, Nelson ignored deadlines and orders regarding client matters, which resulted in default notices from the clerk of court, specifically in the Hackman matter. Furthermore, he repeatedly did not appear for court proceedings, leaving his clients without any representation. *But cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 440–41 (Iowa 2012) (finding no violation of 32:8.4(*b*) for attorney's failure to appear at a deposition because the attorney sent his associate who was knowledgeable about the case).

We agree with the commission's findings and conclude there is sufficient evidence of conduct prejudicial to the administration of justice. Nelson does not dispute this conclusion, based upon his admissions conceding multiple instances of misconduct violating this rule. Therefore, we conclude the Board proved by a convincing preponderance of the evidence Nelson violated rule 32:8.4(*d*) by engaging in conduct prejudicial to the administration of justice.

**I. Trust Account and Accounting: Rules 45.7(4) and 45.10(3).** The Board alleged Nelson violated Iowa Court Rules 45.7(4) and 45.10(3) in his representation of Muscato, Nolte, and Thomas. The commission did not make a specific finding regarding violations of either rule. We

address these rules together because they both refer to Nelson's handling of client funds. *See Dunahoo*, 799 N.W.2d at 532.

Rule 45.7(4) governs the notification an attorney must provide clients when withdrawing fees or expenses. The rule provides:

> A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

Iowa Ct. R. 45.7(4).

Rule 45.10(3) controls when an attorney can withdraw a flat fee. Specifically, the rule states:

> A lawyer and client may agree as to when, how, and in what proportion the lawyer may withdraw funds from an advance fee payment of a flat fee. The agreement, however, must reasonably protect the client's right to a refund of unearned fees if the lawyer fails to complete the services or the client discharges the lawyer. In no event may the lawyer withdraw unearned fees.

Iowa Ct. R. 45.10(3); *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 697 (Iowa 2008) (discussing rule 45.10(3)).

Muscato and Nolte both testified they have received no accounting or refund from Nelson. Nelson admitted in his response to the complaint that he did not mail out an accounting to Nolte, arguing, "Mr. Nolte never asked for an accounting." Furthermore, the record supports he violated this rule in his representation of Nolte, Thomas, and Muscato. Accordingly, we find there is a convincing preponderance of evidence in the record to show Nelson violated rules 45.7(4) and 45.10(3).

## V. Sanction.

There are no standard sanctions for this brand of attorney misconduct. *Templeton*, 784 N.W.2d at 769. Regardless, our goal is to

achieve consistency with our prior cases in constructing the appropriate sanction. *Id.* To determine the proper sanction,

> "we consider the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and the court's duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action."

*Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007)).

It is within our discretion to impose a greater or lesser sanction than recommended by the commission upon proof of such misconduct. *Stowe*, 830 N.W.2d at 739; *see* Iowa Ct. R. 35.11(1). We determine the appropriate sanction based upon "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law." *Stowe*, 830 N.W.2d at 739 (quoting *Comm. on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994)). Our primary purpose for imposing sanctions is not to punish the lawyer but to protect the public. *Id.*

**A. Mitigating Factors.** Several mitigating factors apply to Nelson's situation. First, Nelson admitted to engaging in unethical conduct, both through his stipulations and admissions in response to the Board's complaint. Nelson agreed to the stipulations because he believes most of the Board's allegations are true and because he acknowledges "he goofed up." He also admits that had he not been drinking, his representation would not have been lacking. An attorney's acknowledgment of ethical violations is a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Henrichsen*, 825 N.W.2d 525, 530 (Iowa 2013).

Nelson's alcoholism itself can be a mitigating factor because it is a condition that contributed to the ethical misconduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 13 (Iowa 2012). So too are his rehabilitative efforts to control his alcohol addiction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 636 N.W.2d 86, 89 (Iowa 2001) (considering an attorney's effort to remain sober as a mitigating factor). Nelson started outpatient treatment in June 2011 at United Community Services. Later, after a relapse, he went for detox treatment at Broadlawns for three or four days. He then went to inpatient treatment at MECCA for around twenty days. Afterwards, he engaged in aftercare in Council Bluffs while living with his parents. Nelson indicated to the Board that since reinstatement of his license, he has abstained from consuming alcohol. He attends Alcoholics Anonymous meetings as needed. He told the Board there are several reasons he will not drink again, including a fear of losing everything, his infant daughter, and the fact he is no longer around his drinking partner, his ex-wife.

We can also consider other personal issues for mitigation purposes. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012) (stating that personal issues, including personal stress related to a parent's death or ill health, may be a factor to consider). The collapse and ultimate termination of Nelson's marriage falls within this category.

Other corrective measures, including improving billing and accounting practices, investing in new technology, and employing additional administrative help are mitigating factors. *See Boles*, 808 N.W.2d at 442. Nelson implemented new technologies, including electronic updates to his calendar so as to avoid missing client meetings

and court proceedings. Moreover, he started communicating via email, as well as postal mail. He returned to his previous practice of sending out engagement letters and entering only written attorney fee contracts. He now shares support staff, including a secretary and a paralegal, with other attorneys. Nelson does his own end-of-the-month accounting internally using accounting software, but hires an outside CPA to perform the quarterly accounting. Currently, he has approximately twenty open cases.

Another fact we take into consideration is Nelson's previous disability suspension and temporary suspension for failure to respond to the Board's inquiries. We may award credit for temporary suspensions regarding an attorney's failure to respond. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 800 (Iowa 2010) (holding that "when the temporary suspension is based solely on an attorney's failure to respond to the [B]oard's inquiry, the attorney has responded, and the [B]oard did not seek to continue the suspension, we hold it is appropriate for us, in fashioning an appropriate sanction, to consider the continuing temporary suspension from the date of the hearing before the grievance commission"). We do so because "the purpose of the temporary suspension is more than disciplinary; it is also intended to prompt a response to the [B]oard's inquiries so the disciplinary action may proceed in a timely and informed fashion." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 870 (Iowa 2010). Another option is for us to simply nullify the attorney's failure to respond to rule violations in light of the temporary suspension for that same reason and then base the sanction on the remainder of the ethical violations that are not "duplicative" of the basis for the temporary suspension. *Id.* However, we have refused to give a credit for a temporary suspension imposed for a

criminal conviction for criminal assault, contempt, and repeated violations of noncontact orders, based on the severity of the attorney's misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Polson*, 569 N.W.2d 612, 613–14 (Iowa 1997).

We have previously found, under certain circumstances, that a temporary suspension constitutes adequate punishment for an attorney's ethical misconduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 506 (Iowa 2011) (holding that the attorney's five-month temporary suspension was sufficient to punish the attorney for failing to cooperate with the Board); *Lickiss*, 786 N.W.2d at 870 (finding the attorney's four-month temporary suspension for noncooperation was adequate discipline for a violation of the disclosure requirements in rule 32:8.1). This precedent applies when an attorney fails to respond or cooperate with the Board. Thus, we will consider the suspension for failure to respond as discipline for Nelson's violations of rule 32:8.1(*b*) (knowingly failing to respond to a lawful demand for information from a disciplinary authority).

Most recently, we have noted that we consider an interim suspension intertwined in the current case as a mitigating factor in determining the length and adequacy of a suspension as a sanction in the case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 359 (Iowa 2013); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 15–16 (Iowa 2012) (stating we will not give credit for an interim suspension in this case because the attorney would be entitled to reinstatement immediately after the issuance of our opinion).

Finally, there are several facts Nelson points to for leniency, that do not qualify as mitigating factors. His completion of almost sixty CLEs to reinstate his license is one. *Iowa Supreme Ct. Bd. of Prof'l Ethics &*

*Conduct v. Adams*, 623 N.W.2d 815, 819 (Iowa 2001) (recognizing that a self-imposed suspension after having completed the necessary CLE hours was not a mitigating factor). His voluntary reduction of the number of clients is also not a mitigating factor. *See Ruth*, 636 N.W.2d at 89. Neither is his "voluntary cessation of the practice of law" a "credit against any suspension subsequently imposed." *Id.*

**B. Aggravating Circumstances.** This is not the first time Nelson has been disciplined for unethical conduct. *Boles*, 808 N.W.2d at 442 ("A pattern of misconduct is an aggravating factor."). On three previous occasions, we have publicly reprimanded Nelson. On April 30, 2003, we reprimanded Nelson for neglecting to preserve a client's lawsuit by not making appropriate filings and failing to maintain adequate communication with clients. The second public reprimand occurred on March 18, 2005, for (1) Nelson's failure to appear for a scheduled pretrial conference, constituting neglect of a client matter, and (2) not providing a timely accounting as to the $2500 retainer. The final reprimand for neglect came just a few months later on July 5, 2005, when Nelson failed to properly advise a client and did not properly handle another client matter, resulting in the issuance of an arrest warrant for the client. A record of previous disciplinary action, especially that of the same nature as before the court presently, reflects negatively on an attorney's character. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009).

Moreover, more severe discipline is appropriate when an attorney's unethical conduct causes harm to clients. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1, 4 (Iowa 2000). Here, at least four clients—Bump, Nolte, Thomas, and Muscato—were arrested as a direct result of Nelson's abandonment of his practice and inadequate

representation. In addition, Hackman's appeal was dismissed because Nelson failed to comply with appellate rules and deadlines.

Finally, Nelson did not cooperate with the Board during the disciplinary process by failing to respond to Board letters. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 240 (Iowa 2012) (recognizing an attorney's "failure to cooperate with the formal disciplinary process is an aggravating factor"). Yet Nelson told the Board he had done everything possible to cooperate with the investigation between July 23, 2010, and July 31, 2012.

**C. Appropriate Sanction.** The commission recommends we suspend Nelson's license for two to six weeks but defer such discipline until Nelson is the subject of new, substantiated complaints filed with the Board within three years of this decision. In addition to the conditional suspension, the commission recommends Nelson make restitution to former clients Muscato and Nolte, including (1) any unearned fees existing when Nelson failed to follow through with their representation, (2) the costs associated with hiring substitute counsel, and (3) costs incurred by either client resulting from their respective arrests.

The court has imposed sanctions ranging from two months to three years for ethical conduct akin to that here. We imposed a sixty-day suspension upon an attorney who had a history of sanctions for failing to cooperate with the Board and not communicating with clients, and who had again neglected client matters and failed to communicate with clients. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 295 (Iowa 2011). A sixty-day suspension was appropriate when an attorney with only one prior reprimand for neglect again neglected his client, made misrepresentations to the court, failed to communicate, and

did not cooperate with the Board. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 381–82 (Iowa 2002). However, we imposed an indefinite suspension with no possibility of reinstatement for eighteen months when an attorney with no prior record persistently neglected client matters by abandoning his practice, failed to comply with court orders, made misrepresentations, failed to turn over client papers, and did not timely respond to Board inquiries. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 812–17 (Iowa 2007). In another matter, we imposed a sanction of three years. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 337–39 (Iowa 2000) (finding the attorney violated trust rules, wrongly accepted client fees, displayed a general neglect and lack of communication, complied with a court order only upon threat of contempt, procrastinated in representing clients such that the clients lost time and money, and disregarded rules pertaining to the disciplinary process). We find Nelson's conduct on the more severe end of the spectrum due to the number of aggravating factors, including harm to the clients, the number of ethical violations, and his history of similar violations. However, we also take into consideration a number of mitigating factors, including his interim suspensions totaling two years and eight days.

Accordingly, we suspend Nelson from the practice of law for thirty days. This suspension applies to all facets of the practice of law, including but not limited to advertising his services. *See* Iowa Ct. R. 35.13(3).

Nelson must also comply with Iowa Court Rule 35.23, dealing with notification of clients and counsel. We tax the costs of this action to Nelson, pursuant to Iowa Court Rule 35.27. Absent an objection by the

Board, we shall reinstate Nelson's license to practice law on the day after the thirty-day suspension period expires. *See* Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**